### IN RE CHRISTINA V. ET AL.*
### (13869)

DUPONT, C. J., FOTI and LAVERY, Js.

Argued March 17—decision released June 20, 1995

_____

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 4166B.2, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*Bessye W. Bennett,* for the appellant (respondent).

*Dennis Antonacci,* assistant attorney general, with whom were *Benjamin Zivyon,* assistant attorney general, and, on the brief, *Richard Blumenthal,* attorney general, and *Susan T. Pearlman,* for the appellee (petitioner).

*Jamey Bell,* with whom, on the brief, was *Judith Rozie-Battle,* for the minor children.

LAVERY, J. The respondent mother appeals from the judgment of the trial court granting termination petitions filed by the department of children and families (DCF) with respect to her two youngest children. The respondent claims that the trial court (1) failed to determine the validity of the grounds alleged in the petition, (2) failed to admit evidence of DCF's bias and of its failure to offer timely assistance of reunification to the respondent, (3) could not have found the evidence to be clear and convincing on the adjudication of termination, and (4) did not correctly analyze and apply the seven factors listed in General Statutes § 17a-112 (d). We disagree and affirm the trial court's judgment.

The trial court found the following facts. The children for whom the petitions were filed are Christina, who was eleven years old at the time of trial and Patrick, who was five years old at the time of trial. The respondent has two other children in foster care and they are not involved in this case.

The respondent has been referred to DCF protective services since 1986. From 1986 to 1990, numerous

referrals were made to DCF alleging the respondent's inability to provide a safe, nurturing and permanent environment for herself and her three children. During this period, the referrals claimed that she failed to pay rent and needed to be relocated with her children; she lived periodically in emergency shelters; she was offered services by DCF which she failed to pursue; she was offered services for counseling and evaluation of her children; and she physically and emotionally neglected her children. Home visits indicated there was little food in the house and the children were dirty. The respondent maintained poor housekeeping standards and there was evidence of drug and alcohol use. In 1989, the respondent agreed to enter a detoxification program but failed to do so.

In early 1990, the respondent's physical care and supervision of her children deteriorated. A social worker reported that the children were poorly dressed and were dirty. The respondent's apartment was found to be dirty, cluttered and contained minimal furniture. The older children were frequently truant from school. DCF arranged for the delivery of furniture and household items and services for the care of the children. In April, 1990, a school social worker reported one of the children truant from school for seventy-two days.

In July, 1990, the Hartford police department responded to neighbors' complaints that the older children were missing from the respondent's home. The police officer found the respondent passed out in an intoxicated state; her sixteen month old child, Patrick, was observed crying on the floor in one of the rooms. The respondent was unable to determine the whereabouts of her children. She was arrested and charged with four counts of risk of injury to children and transported to the Morgan Street detention center. The police indicated that the apartment in which the children resided was filthy, cluttered, had a foul odor and

contained little food. The small amount of food they found was not edible, empty liquor and wine bottles were scattered about and the odor of cat feces was very prominent. The children were placed on a ninety-six hour hold. The children's foster mother testified during the trial that, when the children first came to her in 1990, sixteen month old Patrick was covered with sores and was clinging to his sister Christina. The children were hungry, ate from garbage cans and hid food. Christina stuttered, used profanity, was very guarded in her conduct and very protective of her younger brother.

The respondent signed an agreement for voluntary placement of the children on July 17, 1990, while she was at the Niantic correctional center for women. DCF subsequently filed a neglect petition that was adjudicated on March 21, 1991, in favor of the petitioner. DCF characterized the respondent as an emotionally overwhelmed, multiproblemed woman who has been resistant to DCF's intervention and assistance since 1987.

During the course of time that this matter was under the supervision of the DCF and in the juvenile court, there were five psychological evaluations conducted by David M. Mantell, a court-appointed clinical psychologist, to evaluate the respondent and her children. Each evaluation was thorough and, after each evaluation, reports were rendered and filed with the court on February 4, 1991, June 25, 1992, August 10, 1992, February 26, 1994, and April 15, 1994.

Mantell described the respondent as a "physically healthy appearing self-supporting, thirty-four year old woman with a history of alcohol and drug abuse, in remission, who is probably chronically depressed, at least to a mild to moderate degree, and with inadequate personality characteristics and with inadequate parental motivation." The fifth evaluation concluded as fol-

lows: "Although [the respondent] apparently has intensified the frequency of her contacts with her children during the past year, she remains, however, a psychologically inadequate, unreliable person who is apparently unrehabilitated. She acknowledges that she is unable to provide her children with a home at this time. Her future plans in that regard are vague. She does not have the psychological wherewithal to complete a psychological examination, still presenting in a psychologically marginal fashion with strongly inadequate personality characteristics, lack of judgment and insight, and stronger priorities which preclude an active, meaningful involvement in her children's lives. She is essentially out of touch with her children, knowing very little about them, engaging them peripherally, attempting primarily to keep their relationship alive through her unpredictable visitation pattern and her promises about an unspecific, reunified future. Understandably, her children's primary attachments are with their foster families. The mother has been allowed an unusually long time to engage in rehabilitation. Her failure to do so in combination with the pattern of her contacts with her children is seen as a disruptive and disabling force in their lives interfering with their general adjustment as well as their attachment capacities. For these reasons, I find that there is more than ample reason psychologically to support the legal termination of the mother's parental rights in order to maximize the children's best interest."

The respondent argued against termination representing that she had been able to maintain a job as an aide for three years at a convalescent home and she further argued that within the last year she has increased her visits with the children. The court found the visits had increased in frequency in the last year, but were usually five to ten minutes in duration, were unannounced, and were usually outside the home of the

foster mother. The foster mother had never prevented these visits and on a recent occasion the respondent brought with her a friend who, she announced to Patrick and Christina, would soon be their new daddy. This announcement had a deleterious affect on Christina's conduct.

The trial court found that the respondent does not know the most fundamental information about her children. She does not know their heights, weights, schools, teachers or friends. Nonetheless, during her random visits she promises reunification without any realistic understanding of the children's physical, intellectual, emotional, social and moral needs.

The trial court credited the respondent for her personal rehabilitation in maintaining employment and remaining substance free but found that she did not rehabilitate herself as required by statute to a responsible position in the life of her children. The trial court found on the basis of the respondent's testimony and the findings of Mantell that the respondent lacked the appropriate judgment, insight and understanding of her children's needs to act effectively as their full-time parent and, because of the length of time that the children were in foster care, she would not be able to rehabilitate herself to a meaningful role in her children's lives.

The respondent's first and third claims are essentially the same and go to the question of sufficiency of the evidence at trial to support the trial court's finding that the adjudicatory petition proved, by clear and convincing evidence, the ground for termination. The respondent claims that the trial court improperly found that she had failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable period of time she could assume a respon-

sible position with respect to the care of her children. General Statutes § 17a-112 (b) (2).[1]

" ' "On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported." *In re Michael M.*, [29 Conn. App. 112, 121, 614 A.2d 832 (1992)]; *In re Megan M.*, 24 Conn. App. 338, 342, 588 A.2d 239 (1991); *In re Davon M.*, 16 Conn. App. 693, 696, 548 A.2d 1350 (1988). We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached; *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 222, 435 A.2d 24 (1980); nor do we retry the case or pass upon the credibility of the witnesses. *In re Christine F.*, 6 Conn. App. 360, 366–67, 505 A.2d 734, cert. denied, 199 Conn. 808, 809, 508 A.2d 769, 770 (1986). Rather, on review by this court every reasonable presumption is made in favor of the trial court's ruling. *State* v. *Jones*, 205 Conn. 638, 660, 534 A.2d 1199 (1987).' *In re Kezia M.*, 33 Conn. App. 12, 16–17, 632 A.2d 1122, cert. denied, 228 Conn. 915, 636 A.2d 847 (1993)." *In re Felicia D.*, 35 Conn. App. 490, 499, 646 A.2d 862, cert. denied, 231 Conn. 931, 649 A.2d 253 (1994). " 'Personal rehabilitation' as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent." *In re Migdalia M.*, 6 Conn. App. 194, 203, 504 A.2d 532, cert. denied, 199 Conn. 809, 508 A.2d 770 (1986). Our Supreme Court has held that General Statutes (Rev. to 1989) § 17-43a (b) (2)[2]

---

[1] General Statutes § 17a-112 (b) provides in relevant part: "The superior court . . . may grant such petition if it finds, upon clear and convincing evidence, that . . . (2) the parent of a child who has been found by the superior court to have been neglected or uncared for in a prior proceeding has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

[2] General Statutes (Rev. to 1989) § 17-43a (b) (2) is now § 17a-112 (b) (2).

"requires the trial court to analyze the respondent's rehabilitative status as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable 'within a reasonable time.' " *In re Luis C.*, 210 Conn. 157, 167, 554 A.2d 722 (1989); *In re Michael M.*, supra, 124. "A determination by the trial court under [§ 17a-112 (b) (2)] that the evidence is clear and convincing that the parent has not rehabilitated herself will be disturbed only if that finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous. *Pandolphe's Auto Parts, Inc.* v. *Manchester*, [supra, 221–22]." (Internal quotation marks omitted.) *In re Felicia D.*, supra, 500.

The trial court's memorandum of decision cites ample evidence to support its findings in this case. The evidence at trial shows that despite the respondent's holding down a job and apparent freedom from substance abuse, she had the most minimal parental skills and very little parenting motivation. The trial court gave credibility and weight to the April 14, 1994 findings of Mantell that the respondent "remains, however, a psychologically inadequate, unreliable person who is apparently unrehabilitated. She acknowledges she is unable to provide her children with a home at this time. Her future plans in that regard are vague." Courts are entitled to give great weight to professionals in parental termination cases. *In re Michael M.*, supra, 29 Conn. App. 127 n.12.

The overwhelming evidence as found by the trial court set forth previously is that the respondent's concerns were for herself and not her children and, thus, she did not have the judgment, insight and understanding of her children's needs to act as a parent. The court also found that the children had been in foster care for four years and that any further delay would be unreasonable.

We reject the claim that the trial court should have opened the judgment to consider evidence of the petitioner's alleged failure to facilitate the respondent's reunification with her children by accepting the offer by the children's maternal grandmother and aunt to provide a home for them. The respondent presented no evidence at trial of the petitioner's bias in its failure to offer assistance to the respondent for reunification with her children. The trial court made a finding of reasonable effort by the petitioner and we find that there was more than adequate evidence for the trial court to have made such findings.

Though evidence of bias was not offered at trial, it was subsequently raised through a postjudgment motion to open and set aside the judgment of termination of parental rights. The motion was heard and denied by the trial court and the respondent has not directly appealed the denial of that motion. The trial court found that the information presented was not new evidence because it was available to the respondent prior to and during the trial. The opportunity to present evidence existed not only at trial, but also at two previous extensions of commitment hearings and the numerous administrative case and treatment plan reviews, which were held every six months at DCF. The respondent was invited to each of these reviews and chose not to attend and participate. The trial court properly did not abuse its discretion in denying this motion. See *Batory* v. *Bajor*, 22 Conn. App. 4, 8, 575 A.2d 1042, cert. denied, 215 Conn. 812, 576 A.2d 541 (1990).

The respondent's final claim is that the petitioner did not prove by clear and convincing evidence that termination pursuant to § 17a-112 (d)[3] is in the best inter-

---

[3] General Statutes § 17a-112 (d) provides: "Except in the case where termination is based on consent, in determining whether to terminate paren-

est of the children. In its memorandum of decision, the trial court made specific findings regarding the six statutory factors necessary in the disposition phase to assure that termination is in the best interest of the children. The trial court found that each of these factors had been factually established by clear and convincing evidence and ordered the termination of the respondent's parental rights as being in the best interest of the children.

The standard of review on appeal is whether the challenged findings are clearly erroneous. *In re Luis C.*, supra, 210 Conn. 166. The trial court found that DCF had offered appropriate and timely services. The social worker testified as to all of his efforts in trying to help the respondent assume a constructive role as a parent and his frustrations at being rebuffed by her. In December, 1992, the social worker was told by the respon-

tal rights under this section, the court shall consider and shall make written findings regarding: (1) The timeliness, nature and extent of services offered or provided to the parent and the child by an agency to facilitate the reunion of the child with the parent; (2) whether the department of children and families has made reasonable efforts to reunite the family pursuant to the federal Child Welfare Act of 1980, as amended; (3) the terms of any applicable court order entered into and agreed upon by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order; (4) the feelings and emotional ties of the child with respect to his parents, any guardian of his person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties; (5) the age of the child; (6) the efforts the parent has made to adjust his circumstances, conduct, or conditions to make it in the best interest of the child to return him to his home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child; and (7) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent."

dent that she no longer wanted anything to do with him. The foster mother and the children's therapist also testified as to their efforts to engage the respondent in counseling. The respondent herself testified that she had not been in out-patient counseling and only at trial did she perceive counseling to be important in getting her children back. In this regard, the respondent cannot challenge "the inadequacies of the petitioner's offer of services" as she was the one who refused to cooperate. The trial court properly found DCF to have made reasonable efforts.

The trial court found that the respondent had complied with some of the court's expectations but that she possessed no understanding of assuming the constructive role of a parent within the foreseeable future. As to this factor, the court gave weight to Mantell's testimony and reports.

The trial court found that the children clearly had bonded with their foster parents and were fearful of returning to their mother. This finding is supported by the therapist's testimony as well as by that of the foster mother. The foster mother clearly testified that no one prevented the respondent from maintaining a relationship with her children nor did economics prevent her from visiting. The respondent was employed for three and one-half years. She lived within walking distance of the foster home but her visits were sporadic and brief. The trial court found that the children, ages twelve and five, had been in foster care for four years and that leaving the children in legal limbo was not in their best interest.

The trial court's memorandum of decision was thorough, thoughtful and sensitive in its careful review of the evidence on which it relied in both the adjudicatory and dispositional phases. We conclude that its factual

findings and conclusions are supported by the evidence and are not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.