IN RE ROSHAWN R. ET AL.*
(AC 17590)

Foti, Landau and Sullivan, Js.

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued September 15—officially released November 17, 1998

*David B. Rozwaski*, for the appellant (respondent father).

*Lawrence G. Widem*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellee (petitioner).

*Justine FitzGerald Miller*, for the minor children.

*Opinion*

LANDAU, J. The respondent father appeals from the judgments of the trial court terminating his parental rights in two of his five children, R and M.[1] On appeal, the respondent father claims that the trial court improperly found that (1) he had abandoned his children, (2) he had failed to achieve rehabilitation and (3) that it was in the best interests of R and M to terminate his parental rights pursuant to General Statutes (Rev. to

---

[1] The commissioner of the department of children and families (petitioner) filed petitions to terminate the respondent's parental rights in all five of his children, but termination was granted only with respect to the children who are the subject of this appeal. R was born in 1991 and M was born in 1994.

1995) § 17a-112 (b).[2] We affirm the judgments of the trial court.

On March 3, 1995, the commissioner of the department of children and families (petitioner) filed termination of parental rights petitions against the respondents[3] with respect to six children; the petitioner filed a similar petition with respect to a seventh child, J, in February, 1996.[4] The respondent was subsequently determined not to be the biological father of two of the seven children, and the petitions with respect to those children were dismissed as to him. The amended petitions against the respondent alleged three grounds for termi-

[2] General Statutes (Rev. to 1995) § 17a-112 (b) provides in relevant part: "The superior court upon hearing and notice, as provided in sections 45a-716 and 45a-717, may grant such petition if it finds, upon clear and convincing evidence, that the termination is in the best interest of the child and that . . . with respect to any nonconsenting parent, over an extended period of time, which, except as provided in subsection (c) of this section, shall not be less than one year: (1) The child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child; or (2) the parent of a child who has been found by the superior court to have been neglected or uncared for in a prior proceeding has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child; or (3) the child has been denied, by reason of an act or acts of parental commission or omission, the care, guidance or control necessary for his physical, educational, moral or emotional well-being. Nonaccidental or inadequately explained serious physical injury to a child shall constitute prima facie evidence of acts of parental commission or omission sufficient for the termination of parental rights; or (4) there is no ongoing parent-child relationship, which means the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child. . . ."

[3] The respondent mother has not appealed from the trial court's judgments terminating her parental rights in all seven of her children. We refer in this opinion to the respondent father as the respondent.

[4] The termination petition with respect to J was subsequently dismissed on all counts alleged.

nation pursuant to § 17a-112 (b): Abandonment, parental failure to achieve rehabilitation and acts of commission or omission. The parties were heard on numerous days from October 23, 1996, to April 17, 1997. The petitioner placed twenty exhibits in evidence and offered testimony from sixteen witnesses, including a court-appointed psychologist. The respondent testified on his own behalf, placed twenty-five exhibits in evidence and called five witnesses. Counsel for the children placed one exhibit in evidence. Counsel for the petitioner, the respondent and the minor children submitted posttrial briefs. The trial court rendered judgments terminating the respondent's parental rights in R and M on July 24, 1997. This appeal followed.

In a comprehensive memorandum of decision, dated July 24, 1997, the trial court found the following facts. On January 22, 1992, the respondent's children, S, Y and R, were placed in the petitioner's temporary custody, where they remained continuously until the time of judgment. On that same date, the petitioner filed neglect petitions with respect to each of these children, who were subsequently committed to the petitioner for a period not to exceed eighteen months. These eighteen month commitments were extended three times. Shortly after he was born, M was voluntarily placed with the petitioner by his mother and thereafter committed to the petitioner. That commitment was twice extended.

The respondent has a history of chronic substance abuse. For more than five years, the respondent's chemical dependency has rendered him unable to care for his children. Not only did the respondent use illegal drugs, but he also sold them. When he was using illegal drugs, the respondent cared more about drugs than about his children. There was testimony that the respondent is a "nice man" when he is substance free, but becomes angry and aggressive when he abuses drugs.

He physically abused the children's mother and once assaulted a correction officer. The respondent attributed that behavior to heroin withdrawal.

As a result of the respondent's experience with illegal drugs, he has an extensive history with the criminal justice system. He was imprisoned for six months in 1992 and seven months in 1993. He was incarcerated in 1994 until late March when the department of correction sent him to Crossroads, a residential drug treatment facility. While he was in treatment, he tested positive for illegal drug use. Less than two months after he arrived at Crossroads, the respondent left the facility without permission. As a result of his unauthorized departure from treatment, he was charged with the criminal offense of escape from custody. He was apprehended and returned to prison in 1995, where he remained at least until the end of the termination hearing. The respondent saw his children only sporadically on the street or in their foster homes between 1992 and 1995. He had only occasional and cursory involvement in the lives of his children from 1992 until his most recent incarceration in 1995.

Between 1992 and 1995, the petitioner was unable to offer services to the respondent due to his lifestyle, substance abuse, frequent periods of incarceration and lack of interest in services. The respondent's leaving Crossroads demonstrated his resistance to rehabilitative assistance during that period of time. Since his return to prison in 1995, however, the respondent's attitude toward reunification services has changed significantly. The respondent sought and participated successfully in a number of rehabilitation programs offered by the department of correction, including fatherhood seminars, the tier program, Narcotics Anonymous, Alcoholics Anonymous, the alternative to violence project, the families activities and parenting program, and

the Connecticut prison association resettlement program.

To the extent possible, since 1995, the respondent has attempted to reunify with his children. He requested permission to visit with them, he solicited Christmas gifts for some of them through an inmate assistance program, and he took advantage of the limited number of parenting programs the department of correction offers to prisoners. The respondent's efforts to achieve reunification with his children during the past two years were consistent.

As a result of his evaluation of the respondent in 1995, Anthony Campagna, a court-appointed psychologist, found that an active and vital parent-child relationship existed between the respondent and S and Y. He found that there was no relationship between the respondent and R and M. Campagna concluded that the respondent could not be expected to achieve a sufficient degree of rehabilitation within a reasonable period of time so that he could assume a responsible position in their lives due to his need for drug rehabilitation therapy and other psychological problems. In commenting on the best interests of the children, however, Campagna evaluated the children individually on the basis of their developmental needs, ages and relationships with the respondent. He concluded that it was in the best interests of R and M to terminate the respondent's parental rights, but that it was not in the best interests of S and Y, who were emotionally attached to the respondent.

At the conclusion of the adjudication phase of the trial, the trial court found that the petitioner had proved by clear and convincing evidence that the respondent had abandoned his four oldest children pursuant to § 17a-112 (b) (1). With respect to S, Y and R, this ground was proven to have existed for more than one year

prior to the initiation of the termination proceedings. Although one year had not yet passed between M's birth on March 17, 1994, and the petitioner's initiating termination proceedings against the respondent on March 3, 1995, the trial court found by clear and convincing evidence that the petitioner had proved that it was in M's best interest, given all the facts and circumstances of this case, that the statutory one year requirement be waived.

Regarding the allegation of failure to achieve rehabilitation, the trial court found with respect to R and M that the petitioner proved by clear and convincing evidence that for a period of more than one year, the respondent had failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, he could assume a responsible position in their lives. Although the petitioner proved by clear and convincing evidence that the respondent had failed to achieve a sufficient degree of rehabilitation for the requisite period of time prior to March 3, 1995, with respect to S and Y, the petitioner failed to prove by clear and convincing evidence that there was no belief that the respondent could assume a responsible position in their lives within a reasonable time.

The petitioner failed to prove by clear and convincing evidence that the respondent denied his children the care, guidance and control necessary for their physical, educational, moral or emotional well-being as the result of acts of parental commission or omission. The counts of the petitions with respect to that allegation against the respondent were dismissed.

Following the dispositional phase of the trial, the trial court found, on the basis of Campagna's report, that it was not in the best interests of S and Y to terminate the respondent's parental rights. It found, however, that it was in the best interests of R and M that the respon-

dent's parental rights be terminated with respect to them and rendered judgments accordingly. On appeal, the respondent challenges the trial court's factual findings and termination of his parental rights in R and M.

"The standard for review on appeal [from a termination of parental rights] is whether the challenged findings are clearly erroneous. *In re Luis C.*, [210 Conn. 157, 166, 554 A.2d 722 (1989)]; *In re Christina V.*, 38 Conn. App. 214, 223, 660 A.2d 863 (1995). The determinations reached by the trial court that the evidence is clear and convincing will be disturbed only if [any challenged] finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous. *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221–22, 435 A.2d 24 (1980). *In re Juvenile Appeal (84-3)*, 1 Conn. App. 463, 478, 473 A.2d 795, cert. denied, 193 Conn. 802, 474 A.2d 1259 (1984). *In re Luis C.*, supra, 210 Conn. 166.

"On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported. *In re Michael M.*, [29 Conn. App. 112, 121, 614 A.2d 832 (1992)]; *In re Megan M.*, 24 Conn. App. 338, 342, 588 A.2d 239 (1991); *In re Davon M.*, 16 Conn. App. 693, 696, 548 A.2d 1350 (1988). We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached; *Pandolphe's Auto Parts, Inc.* v. *Manchester*, [supra, 181 Conn. 222]; nor do we retry the case or pass upon the credibility of the witnesses. *In re Christine F.*, 6 Conn. App. 360, 366–67, 505 A.2d 734, cert. denied, 199 Conn. 808, 809, 508 A.2d 769, 770 (1986). Rather, on review by this court every reasonable presumption is made in favor of the trial court's ruling. *State* v. *Jones*, 205 Conn. 638, 660, 534 A.2d 1199 (1987). *In re Kezia M.*, 33 Conn. App. 12, [17], 632 A.2d 1122, cert. denied, 228 Conn. 915, 636 A.2d 847 (1993); *In re Felicia D.*, 35 Conn. App. 490, 499, 646 A.2d 862, cert. denied, 231 Conn.

931, 649 A.2d 253 (1994)." (Internal quotation marks omitted.) *In re Eden F.*, 48 Conn. App. 290, 309, 710 A.2d 771, cert. granted on other grounds, 245 Conn. 917, 717 A.2d 234 (1998).

"A hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. *In re Tabitha P.*, 39 Conn. App. 353, 360, 664 A.2d 1168 (1995). 'In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether termination is in the best interest of the child.' Id." *In re Jessica M.*, 49 Conn. App. 229, 236, 714 A.2d 64, cert. granted on other grounds, 247 Conn. 915, 722 A.2d 806 (1998).

I

The respondent's first claim is that the trial court improperly found that he had abandoned his children pursuant to § 17a-112 (b) (1). We do not agree.

"Abandonment focuses on the parent's conduct. . . . A lack of interest in the child is not the sole criterion in determining abandonment. . . . General Statutes § 17a-112 (b) (1) defines abandonment as the fail[ure] to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child . . . . Attempts to achieve contact with a child, telephone calls, the sending of cards and gifts, and financial support are indicia of interest, concern or responsibility for the welfare of a child. . . . Abandonment occurs where a parent fails to visit a child, does not display love or affection for the child, does not personally interact with the child, and demonstrates no concern for the child's welfare. . . .

"Section 17a-112 (b) (1) does not contemplate a sporadic showing of the indicia of interest, concern or responsibility for the welfare of a child. A parent must maintain a reasonable degree of interest in the welfare of his or her child. Maintain implies a continuing, reasonable degree of concern. . . .

"The commonly understood general obligations of parenthood entail these minimum attributes: (1) express love and affection for the child; (2) express personal concern over the health, education and general well-being of the child; (3) the duty to supply the necessary food, clothing, and medical care; (4) the duty to provide an adequate domicile; and (5) the duty to furnish social and religious guidance." (Citations omitted; internal quotation marks omitted.) *In re Kezia M.*, supra, 33 Conn. App. 17–18.

Our review of the record supports the trial court's finding that the respondent abandoned his children and that the abandonment existed for at least one year prior to the petitioner's filing the termination petition. From 1992 through the time of trial, the respondent was in prison more than he was out of prison. Although, as the respondent argues, a parent's incarceration by itself does not constitute abandonment, our Supreme Court has noted that "the inevitable restraints imposed by incarceration do not in themselves excuse a failure to make use of available though limited resources for contact with a distant child." *In re Juvenile Appeal, (Docket No. 10155)*, 187 Conn. 431, 443, 446 A.2d 808 (1982). Moreover, prior to 1995, the respondent made no effort to take advantage of services offered by the department of correction to keep in touch with his children. He failed to inform the petitioner of his whereabouts so that visitation with his children could be arranged.

The respondent also overlooks the fact that he was in prison because of his addiction to and selling of

illegal drugs and that, prior to 1995, he took no interest in obtaining support to combat his addiction. The respondent left a residential drug treatment program, without permission, before he had completed the program. In fact, he tested positive for illegal drugs while at the residential program. By his own admission, the respondent recognized that when he was abusing narcotics he "had no conscience" and that he "wasn't doing much of [anything] for [the] children." He never visited R in his foster home, and he never knew M. Therefore, we conclude that the trial court's finding that the respondent abandoned his children was not clearly erroneous.

II

The respondent's second claim is that the trial court improperly found that he had failed to achieve rehabilitation as to R and M because that finding is inconsistent with the trial court's finding as to S and Y on the same allegation. We are not persuaded.

"[T]he parent of a child who has been found by the superior court to have been neglected or uncared for in a prior proceeding has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, *considering the age and needs of the child,* such parent could assume a responsible position in the life of the child . . . ." (Emphasis added.) General Statutes (Rev. to 1995) § 17a-112 (b) (2). " 'Personal rehabilitation' as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent." *In re Migdalia M.,* 6 Conn. App. 194, 203, 504 A.2d 533, cert. denied, 199 Conn. 809, 508 A.2d 770 (1986). "Our Supreme Court has held that § [17a-112] (b) (2) requires the trial court to analyze the respondent's rehabilitative status as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable within a

reasonable time. . . . A determination by the trial court under § [17a-112] (b) (2) that the evidence is clear and convincing that the parent has not rehabilitated [himself] will be disturbed only if that finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous." (Citations omitted; internal quotation marks omitted.) *In re Felicia D.*, supra, 35 Conn. App. 500.

The essence of the respondent's argument that the trial court's findings are clearly erroneous is based in the disparate decisions that the trial court made with respect to S and Y and with respect to R and M. Both prongs of the test must be met to terminate parental rights for failure to achieve rehabilitation: One, that the parent has failed to achieve rehabilitation and, two, that there is no reason to believe that the parent could assume a responsible position in the life of the child within a reasonable time, *considering the age and needs of the child.* The trial court found that the petitioner met the first prong of the test by clear and convincing evidence as to all of the children. The trial court also properly analyzed the respondent's rehabilitative status as it relates to the needs of each child.

Using Campagna's report and testimony, in part, as a basis,[5] the trial court found that there was a vital and active relationship between the respondent and S and Y. Y, who would soon turn eight, was sad about not seeing her father. S, who was nine, had recently experienced a number of emotional and behavioral problems that jeopardized his specialized foster care placement. Furthermore, the trial court found that the respondent's consistent efforts to improve his ability to be a good

---

[5] In his brief, the respondent claims that Campagna's report was out of date at the time of trial. We note, however, that the respondent was present throughout the trial and was represented by counsel. At no time during the trial did the respondent request that Campagna conduct additional studies or review his report in light of the passage of time.

parent since 1995 warranted the belief that the respondent could achieve a responsible role in the life of these two children within a reasonable period of time. These findings are supported by the record.

On the other hand, the trial court found that due to their ages and special needs, there was no reason to believe that the respondent could achieve a responsible role in the lives of R and M within a reasonable period of time. Campagna found that R and M, who were six and three years of age, respectively, at the time of trial, did not have the same type of bond with the respondent as did S and Y, who are older. The record discloses that R was born in June, 1991, and placed in foster care seven months later, where he remained through the time of trial. M was born in March, 1994, when the respondent was in prison, and has been in foster care virtually all of his life. On the basis of the record, we cannot say the that trial court improperly analyzed the respondent's rehabilitative needs with respect to the needs of R and M, and that its findings are clearly erroneous. Therefore, we will not disturb the trial court's findings.

### III

The respondent's final claim is that the trial court improperly found that it was in the best interests of R and M to terminate the respondent's parental rights because the petitioner did not make reasonable efforts to reunify the children with the respondent pursuant to § 17a-112 (c).[6] The respondent claims that at no time were any services offered to him by the petitioner,

---

[6] The petitioner petitioned to terminate the respondent's parental rights pursuant to General Statutes (Rev. to 1995) § 17a-112 (b). We note that under § 17a-112 (b), the petitioner was not required to make reasonable efforts to reunify the parent with the child. But see § 17a-112 (b), as amended by Public Acts 1995, No. 95-238, § 3. The Superior Court was, however, required by § 17a-112 (d) to consider whether reasonable reunification efforts had been made. See footnote 7.

except visitation while he was incarcerated, which was sporadic until the last eighteen months of his incarceration. Therefore, the respondent claims that the petitioner failed to make reasonable efforts to reunify him with his children. We disagree.

In its memorandum of decision, the trial court made the seven findings mandated by General Statutes (Rev. to 1995) § 17a-112 (d).[7] The trial court found by clear and convincing evidence that the petitioner and other agencies and treatment providers offered reasonable and appropriate reunification and rehabilitative services to the respondent. Prior to 1995, the respondent's lifestyle, substance abuse and frequent periods of incarceration prevented the petitioner from offering him services. The department of correction offered the

---

[7] General Statutes (Rev. to 1995) § 17a-112 (d) provides: "Except in the case where termination is based on consent, in determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding: (1) The timeliness, nature and extent of services offered or provided to the parent and the child by an agency to facilitate the reunion of the child with the parent; (2) whether the department of children and families has made reasonable efforts to reunite the family pursuant to the federal Child Welfare Act of 1980, as amended; (3) the terms of any applicable court order entered into and agreed upon by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order; (4) the feelings and emotional ties of the child with respect to his parents, any guardian of his person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties; (5) the age of the child; (6) the efforts the parent has made to adjust his circumstances, conduct, or conditions to make it in the best interest of the child to return him to his home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child; and (7) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent."

respondent drug rehabilitation services at Crossroads, but the respondent left the facility without permission and without finishing the program. Since 1995, the respondent has taken advantage of a number of parenting and substance abuse programs offered by the department of correction, and the petitioner has taken the respondent's children to visit him, which the trial court considered to be reasonable efforts to reunite the respondent with his children.

The trial court also found that no court orders were entered with respect to the respondent and that he did not sign any court-approved expectations or service agreements. The trial court found by clear and convincing evidence that the respondent knew that he had to overcome his substance abuse and to avoid further involvement with the criminal justice system in order to reunite with his children.

The trial court further found that each of the children is in foster care. The respondent has an active and important parent-child relationship with S and Y. He has a weaker relationship with R and none with M. The respondent has reestablished visitation with the children, who appear to enjoy this time with their father. The children range in age from one to nine.

The trial court found that the respondent has made efforts to adjust his conduct, conditions and circumstances, but that his efforts have not been enough to encourage the belief that R and M could be restored to his parental home within a reasonable time. The respondent's efforts to adjust were considered by the trial court in deciding not to terminate his parental rights in S and Y. Neither the petitioner nor any other agency took unreasonable action, and there were no adverse economic circumstances that prevented the respondent from maintaining a meaningful relationship with his children.

On the basis of these findings, which accord with § 17a-112 (b) and are not clearly erroneous, we will not disturb the trial court's finding that termination of the respondent's parental rights was in the best interests of R and M.[8]

The judgments are affirmed.

In this opinion the other judges concurred.

---

[8] Counsel for R and M filed a brief and participated in oral argument before this court. The children's counsel took the position that the termination with respect to M should be affirmed but reversed with respect to R. Specifically, children's counsel advocated that the trial court improperly found by clear and convincing evidence that it was in R's best interest to terminate his father's parental rights in him while also finding it was not in the best interest of his older brother and sister, S and Y. Although counsel presented no evidence in support of this position, the children's counsel claimed that because R is emotionally fragile and has lived with S and Y at various times during his life, it would be detrimental to R if S and Y have access to their father but he does not. In our opinion, counsel's position is an expression of a personal opinion or testimony. In a recent opinion that postdated the submission of the parties' briefs, our Supreme Court held that Practice Book § 5-1 does not permit the introduction of an attorney's personal opinions into his or her submissions to the court in any type of legal proceeding, including family matters. See *Ireland* v. *Ireland*, 246 Conn. 413, 435–40, 717 A.2d 676 (1998) (en banc).