## IN RE HECTOR L. ET AL.*
## (AC 18632)

Lavery, Schaller and Hennessy, Js.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued January 12—officially released May 18, 1999

*Raymond J. Rigat,* for the appellant (respondent father).

*Paula D. Sullivan,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Susan T. Pearlman,* assistant attorney general, for the appellee (petitioner).

*Opinion*

SCHALLER, J. The respondent father[1] appeals from the judgments of the trial court terminating his parental

[1] The parental rights of the respondent mother were also terminated. This appeal, however, concerns only the respondent father. We refer to him as the respondent in this opinion.

rights with respect to his four children. On appeal, the respondent claims that the trial court improperly (1) terminated his parental rights on the statutory ground of failure to achieve personal rehabilitation, (2) reviewed the evidence under the "clear and convincing evidence" standard, rather than the "beyond a reasonable doubt" standard, (3) found that there was no ongoing relationship between the respondent and his two youngest children because the trial court did not apply the correct legal standard and (4) found that the department of children and families (department) made reasonable efforts to reunite the children with the respondent. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. The respondent and Eneida R. are the parents of four children. The department has been involved with this family since June, 1994. At that time, various services were offered to the family to help keep the children in the home. The department, however, received limited cooperation from the parents. In 1995, the two oldest children were removed from the home twice for brief periods of time.

Four weeks after the two youngest children, who are twins, were born in 1996, the respondent and Eneida were in a department store with three of the children. A police officer on private security duty watched the respondent put a pair of children's shoes into a bag in Eneida's shopping basket. Both the respondent and Eneida were detained when the security guard discovered that they had not paid for the shoes. Two security guards escorted the respondent to an upstairs room for questioning. At the top of the stairs, the respondent, who was carrying one of the children in a backpack, began fighting with the security guards. The police were called, and the respondent and Eneida were eventually subdued and arrested. A subsequent search of the respondent yielded thirty-eight packets of heroin and

$568. After their parents' arrest, the children were placed in foster care and, shortly thereafter, with relatives, where the children have remained. On November 5, 1996, all four children were adjudicated neglected and committed to the department.

On August 8, 1997, the commissioner of children and families (petitioner) filed termination of parental rights petitions against the parents with respect to all four children. The petitions alleged the following statutory grounds with respect to both parents: failure to achieve personal rehabilitation pursuant to General Statutes (Rev. to 1997) § 17a-112 (c) (3) (B), and no ongoing parent-child relationship pursuant to General Statutes (Rev. to 1997) § 17a-112 (c) (3) (D).[2]

Termination hearings were held on April 13 and April 14, 1998. The trial court heard testimony from department social workers, a police officer, the clinical supervisor of a methadone clinic, a hospital record keeper, the children's foster mothers and both parents.[3] The court received into evidence the social history of the

---

[2] General Statutes (Rev. to 1997) § 17a-112 (c) provides in relevant part: "The Superior Court, upon hearing and notice . . . may grant a [termination] petition filed pursuant to this section if it finds by clear and convincing evidence (1) that the Department of Children and Families has made reasonable efforts to locate the parent and to reunify the child with the parent . . . (2) that termination is in the best interest of the child, and (3) that over an extended period of time, which . . . shall not be less than one year . . . (B) the parent of a child who has been found by the Superior Court to have been neglected or uncared for in a prior proceeding has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . (D) There is no ongoing parent-child relationship, which means the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child . . . ."

[3] At the time of the hearing, the respondent father was incarcerated and had been since the January 31, 1996 incident.

parents, social studies, the court-approved expectations, arrest and conviction records, a police report, substance abuse treatment records and a visitation schedule.

With respect to the statutory grounds for termination of parental rights, the trial court found by clear and convincing evidence that "the parents have failed to achieve such a degree of personal rehabilitation as would encourage the belief that, within a reasonable time, considering the ages and needs of the children, such parents could assume a responsible position in the lives of the children." The trial court also found, with respect to the twins, that the parents "have no ongoing parent-child relationship with the twins . . . ." The trial court found that the grounds had existed for more than one year and made the mandatory findings required by General Statutes (Rev. to 1997) § 17a-112 (e), now § 17a-112 (d).[4] The trial court then terminated the parental rights of both parents, finding that it was

---

[1] General Statutes (Rev. to 1997) § 17a-112 (e) provides: "Except in the case where termination is based on consent, in determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding: (1) The timeliness, nature and extent of services offered, provided and made available to the parent and the child by an agency to facilitate the reunion of the child with the parent; (2) whether the Department of Children and Families has made reasonable efforts to reunite the family pursuant to the federal Adoption Assistance and Child Welfare Act of 1980, as amended; (3) the terms of any applicable court order entered into and agreed upon by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order; (4) the feelings and emotional ties of the child with respect to his parents, any guardian of his person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties; (5) the age of the child; (6) the efforts the parent has made to adjust his circumstances, conduct, or conditions to make it in the best interest of the child to return him to his home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communication with the

in the best interests of the children. This appeal by the respondent followed. Additional facts will be set forth as they become relevant in the context of the respondent's specific claims.

"A hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. . . . In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether termination is in the best interest of the child." (Citation omitted; internal quotation marks omitted.) *In re Roshawn R.*, 51 Conn. App. 44, 52, 720 A.2d 1112 (1998).

"The standard for review on appeal [from a termination of parental rights] is whether the challenged findings are clearly erroneous. . . . The determinations reached by the trial court that the evidence is clear and convincing will be disturbed only if [any challenged] finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous." (Citations omitted; internal quotation marks omitted.) Id., 51.

"On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached . . . nor do we

guardian or other custodian of the child; and (7) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent."

retry the case or pass upon the credibility of the witnesses. . . . Rather, on review by this court every reasonable presumption is made in favor of the trial court's ruling." (Citations omitted; internal quotation marks omitted.) *In re Christina V.*, 38 Conn. App. 214, 220, 660 A.2d 863 (1995).

## I

The respondent's first claim is that the trial court improperly found that he had failed to achieve rehabilitation and that he is unlikely to do so within a reasonable time. The respondent specifically challenges the trial court's conclusions, arguing that they are not legally correct[5] or factually supported by the record. We disagree.

The respondent argues that there is nothing in the record other than evidence of his incarceration to suggest that he failed to achieve such a degree of personal rehabilitation as would encourage the belief that, within a reasonable time, he could not assume a responsible position in his children's lives. Testifying on his own behalf at the hearing, the respondent's position was basically that he is reforming himself in prison, and that he intends to take anger management programs and

[5] The respondent asserts that his parental rights were terminated solely because of his confinement status and, therefore, he has been punished twice for the same offense in violation of the eighth amendment to the United States constitution and article first, § 8, of the constitution of Connecticut. The respondent, however, offers no analysis or authority to support this claim. "We are not required to review issues that have been improperly presented to this court through an inadequate brief. *Connecticut National Bank* v. *Giacomi*, 242 Conn. 17, 44–45, 699 A.2d 101 (1997). Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . *Cummings* v. *Twin Tool Mfg. Co.*, 40 Conn. App. 36, 45, 668 A.2d 1346 (1996). . . . *State* v. *Henderson*, 47 Conn. App. 542, 558, 706 A.2d 480, cert. denied, 244 Conn. 908, 713 A.2d 829 (1998)." (Internal quotation marks omitted.) *In re Tabitha T.*, 51 Conn. App. 595, 604, 722 A.2d 1232 (1999). We therefore decline to review this claim because it is inadequately briefed.

substance abuse programs. The respondent also testified that he hopes to be a good role model for his children after he gets out of prison,[6] completes a halfway house program, finds a job, establishes a home and gets back on his feet again. He further testified that he was neither presently abusing drugs nor had he used drugs for the past three years. The respondent argues that there was no evidence presented at the termination hearing to indicate that his testimony was inaccurate and, therefore, that the trial court's determination was clearly erroneous.

The trial court, however, is not bound by the uncontradicted testimony of any witness; *Bieluch* v. *Bieluch*, 199 Conn. 550, 555, 509 A.2d 8 (1986); see *Acheson* v. *White*, 195 Conn. 211, 217, 487 A.2d 197 (1985); and is in fact free to reject such testimony. See *State* v. *Dudla*, 190 Conn. 1, 7, 458 A.2d 682 (1983). The trier is the judge of the credibility of all the witnesses and the weight to be given their testimony and, therefore, has the right to accept part or disregard part of a witness' testimony. *Griffin* v. *Nationwide Moving & Storage Co.*, 187 Conn. 405, 422, 446 A.2d 799 (1982). Here, the trial court was under no obligation to give particular weight to the respondent's testimony in its determination of whether he had achieved rehabilitation under § 17a-112 (c) (3) (B). The test is not whether any evidence was produced as to the respondent's personal rehabilitation, but whether the record supports the trial court's determination that the respondent had not achieved the standard of personal rehabilitation required under § 17a-112 (c) (3) (B). See *In re Christina V.*, supra, 38 Conn. App. 220.

" 'Personal rehabilitation' as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent." (Internal quotation marks omitted.) Id., 220. "[Section 17a-112 (c) (3)

---

[6] The respondent testified that his maximum release date is May 14, 2000.

(B)] requires parental rights to be terminated if by clear and convincing evidence it is established that the respondent's level of rehabilitation falls short of the level which would 'encourage the belief that *within a reasonable time, considering the age and needs of the child*,' the parent could assume a responsible position. . . . Thus, the statute requires the trial court to analyze the respondent's rehabilitative status as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable 'within a reasonable time.' " (Emphasis in original.) *In re Luis C.*, 210 Conn. 157, 167, 554 A.2d 722 (1989).

Our review of the record discloses that the trial court concluded properly that there was clear and convincing evidence that the respondent failed to rehabilitate himself as required under the statute. At the adjudicatory phase of the termination hearing, the ultimate issue faced by the trial court was whether the respondent was better able to resume the responsibilities of parenting at the time of filing the termination petition than he had been at the time of the children's commitment.[7] See *In re Michael M.*, 29 Conn. App. 112, 126, 614 A.2d 832 (1992).

In its memorandum of decision, the trial court noted that, since meeting the children's mother in 1991, the respondent had been in jail for six and one-half years. Although the respondent had been incarcerated since the children were committed to the custody of the department in 1996, he had not taken any of the available substance abuse and parenting programs to achieve personal rehabilitation. Although the respondent could not avail himself of the rehabilitative programs available through the department because of his

---

[7] In the dispositional phase of the termination hearing, "[t]he issue of whether parental rights should be terminated must be decided by the trial court on the basis of conditions existing at the time of the trial." *In re Michael M.*, 29 Conn. App. 112, 126 n.11, 614 A.2d 832 (1992).

incarceration, it does not excuse his failure to use the resources offered by the department of correction. See *In re Roshawn R.*, supra, 51 Conn. App. 53. The respondent's lack of effort to improve his parenting since he was incarcerated did not warrant the belief that the respondent could achieve a responsible role in the lives of his four children within a reasonable period of time. Illustrative of the defendant's rehabilitative status at the time of the hearing is his statement, "I never was a bad father to my kids, you know." The respondent made this statement after admitting that he had a decade long criminal history, used a series of aliases so the police could not learn his identity, fought with police with his child in his backpack and possessed thirty-eight packets of heroin while he was shopping with his children.

Additionally, the record reflects that the respondent did not offer any plan to care for the children when he is released from prison, and the trial court determined that he was not able to do so. A social worker testified that, in a recent interview with the respondent, he had told her that when he is released from prison he plans to return to Puerto Rico. The social worker noted that the respondent made no mention of his children.

In its memorandum of decision, the trial court concluded that, considering their ages and needs, the children require a permanent, structured, caring and nurturing environment that the respondent was not able to offer the children at that time or within a reasonable time. The trial court found that giving the respondent additional time would not bring his performance as a parent within the acceptable statutory standards and that the children's permanent placement could not be delayed.[8] Although the respondent claimed that he

---

[8] The court noted that even the respondent recognized that the children were well adjusted and being raised well in their current relative foster placements and, further, that the respondent did not object to their being adopted by their present caretakers.

ceased using drugs, he did so only after he was incarcerated.[9] Furthermore, the record discloses that the trial court based its conclusion on a plenary consideration of the factors identified in § 17a-112 (e) and did not grant the petition to terminate the respondent's parental rights solely on the basis of the respondent's incarceration. See *In re Luis C.*, supra, 210 Conn. 168. In light of these findings, as supported by the record, we conclude that the trial court's conclusion that the respondent failed to achieve a level of rehabilitation that would encourage the belief that, within a reasonable time, considering the children's ages and needs, he could assume a responsible position in their lives was not clearly erroneous.

## II

The respondent next claims that the trial court improperly reviewed the evidence under the "clear and convincing evidence" standard, rather than the "beyond a reasonable doubt" standard. Specifically, the respondent claims that the clear and convincing evidence standard of proof in a termination proceeding violates the constitution of Connecticut when used to determine whether a respondent parent has failed to achieve rehabilitation. This issue was not raised before the trial court and was not raised pursuant to the plain error doctrine on appeal. Accordingly, we decline to review this claim.[10] See *In re Jessica B.*, 50 Conn. App. 554,

---

[9] It is noteworthy that, at the termination hearing in 1998, the respondent claimed he had been drug free for three years; at the same time he stated that the thirty-eight packets of heroin found on him in 1996 were for his own personal use.

[10] We note, however, that in *In re Marvin M.*, 48 Conn. App. 563, 580, 711 A.2d 756, cert. denied, 245 Conn. 916, 719 A.2d 900 (1998), we said: "The United States Supreme Court has already settled this issue. See *Santosky* v. *Kramer*, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). 'A majority of the States have concluded that a "clear and convincing evidence" standard of proof strikes a fair balance between the rights of the natural parents and the State's legitimate concerns. . . . We hold that such a standard adequately conveys to the factfinder the level of subjective certainty about his

570, 718 A.2d 997 (1998); *State* v. *Hermann*, 38 Conn. App. 56, 64, 658 A.2d 148, cert. denied, 235 Conn 903, 665 A.2d 904 (1995); cf. *In re Jonathan P.*, 23 Conn. App. 207, 211, 579 A.2d 587 (1990).

## III

The respondent next claims that the trial court used an incorrect legal standard when finding that there were no ongoing relationships between the respondent and the two youngest children. Specifically, the respondent claims that, with regard to the "no ongoing relationship" ground for termination, a finding of unfitness is a constitutional prerequisite to terminate parental rights. This issue was not raised before the trial court and was not raised pursuant to the plain error doctrine on appeal. Accordingly, we decline to review this claim.[11] See *In re Jessica B.*, supra, 50 Conn. App. 570; *State* v. *Hermann*, supra, 38 Conn. App. 64; cf. *In re Jonathan P.*, supra, 23 Conn. App. 211.

---

factual conclusions necessary to satisfy due process. We further hold that determination of the precise burden equal to or greater than that standard is a matter of state law properly left to state legislatures and state courts.' Id., 769–70. Our legislature has determined that 'clear and convincing evidence' is the appropriate standard in a termination proceeding. See § 17a-112 (c) . . . ." (Citation omitted.)

[11] We note, however, that because we have concluded that the evidence was sufficient to support the termination of the respondent's parental rights under § 17a-112 (c) (3) (B), it would not be necessary to address the respondent's constitutional challenge to § 17a-112 (c) (3) (D). " 'In a petition to terminate parental rights under section 17-43a [the predecessor to § 17a-112], the petitioner must list the grounds relied upon and, if any one of these grounds may be upheld, the order to terminate must stand. *In re Juvenile Appeal (83-BC)*, 189 Conn. 66, 69, 454 A.2d 1262 (1983) (where a mother claimed there was insufficient evidence to terminate her rights on either of two grounds under § 17-43a [b], our conclusion that one of the grounds was supported by the evidence made it unnecessary to consider whether the second ground was supported). Since the [respondent unsuccessfully challenges] one of the statutory bases on which the trial court terminated her parental rights, we do not decide the constitutional issues she has raised in connection with the other . . . [ground].' *In re Juvenile Appeal (84-BC)*, [194 Conn. 252, 258, 479 A.2d 1204 (1984)]." *In re Luis C.*, supra, 210 Conn. 170.

## IV

The respondent's final claim is that the trial court improperly found that the department made reasonable efforts to reunite the children with the respondent pursuant to General Statutes § 17a-112 (c) (1). We disagree.

"Before a termination of parental rights can be granted, the trial court must be convinced that the department has made reasonable efforts to reunite the child with his or her family. The term 'reasonable efforts' was recently addressed by this court: 'Turning to the statutory scheme encompassing the termination of the parental rights of a child committed to the department, the statute imposes on the department the duty, inter alia, to make reasonable efforts to reunite the child or children with the parents. The word reasonable is the linchpin on which the department's efforts in a particular set of circumstances are to be adjudged, using the clear and convincing standard of proof. Neither the word "reasonable" nor the word "efforts" is, however, defined by our legislature or by the federal act from which the requirement was drawn. . . . [R]easonable efforts means doing everything reasonable, not everything possible.' In re Eden F., 48 Conn. App. 290, 311–12, 710 A.2d 771, cert. granted on other grounds, 245 Conn. 917, 717 A.2d 234 (1998). The trial court's ruling on this issue should not be disturbed on appeal unless, in light of the evidence in the entire record, it is clearly erroneous. In re Tabitha P., 39 Conn. App. 353, 361, 664 A.2d 1168 (1995)." (Emphasis added.) In re Jessica B., supra, 50 Conn. App. 565–66.

The respondent claims that the department "could have done more" to provide reunification services while he was incarcerated. Yet, the respondent failed to identify the additional types of services the department could have provided him or how such services could

have been offered while he was incarcerated. Additionally, the record reflects that the respondent knew what rehabilitation programs were available through the department of correction and, as noted earlier, he failed to take any of the substance abuse and parenting programs offered. Although the respondent could not avail himself of the programs normally available through the department because of the restraints imposed by his incarceration, he is not excused from making use of available programs offered by the department of correction. See *In re Roshawn R.*, supra, 51 Conn. App. 53.

"[R]easonableness is an objective standard . . . and whether reasonable efforts have been proven depends on the careful consideration of the circumstances of each individual case." (Citation omitted.) *In re Eden F.*, supra, 48 Conn. App. 312. In its memorandum of decision, the trial court found by clear and convincing evidence that the petitioner "made reasonable efforts to reunify the family, given the situation and circumstances, as far as possible."

The record reflects that, even though the respondent was incarcerated, the department maintained his visits with the children. Once a month, the department transported the children to the prison to visit with their father. When the two youngest children reacted negatively and aggressively to the visits with their father, the department made an additional effort to continue these visits by having the foster mother, with whom the children felt safe and at ease, accompany the children and remain with them during the visits to the prison, thus giving the respondent every chance to develop positive relationships with the two youngest children.

In light of the trial court's findings and conclusions and our thorough review of the record, we are not persuaded, considering the circumstances of this case,

that the trial court's conclusion that the department made reasonable efforts to reunite the family was clearly erroneous.

The judgments are affirmed.

In this opinion the other judges concurred.