[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
BACKGROUND
On September 24, 1998, the court, Kavanewsky, J., entered temporary alimony support orders of $11,370 per month to be made CT Page 857 by direct payment of approximately $8,830 of monthly expenses and payment of $2,500 in support to the Plaintiff.
At the time of these September 24, 1998 orders, Judge Kavanewsky found that the Defendant's income was $1630 per week, $7020 per month. The court also found that, at the time, the Defendant's mother gave the parties weekly gifts of $700, provided housing for the parties prior to the purchase of their home, housing for the Defendant after he left the family home, pendente lite, paid substantial amounts for the children's education and gymnastic lessons, paid for the Defendant's expenses for his polo play, and for various other of their living expenses. The court also noted that the Defendant received both income and principal distributions from a trust fund.
The Defendant, thereafter, requested the court to reduce this award because his mother had terminated the $700 weekly gifts. Judge Kavenewsky, finding this reduction a substantial change of circumstances, reduced the order by $1000 per month to $10,300 ($8870 for payment of expenses and $1500 in support to the Plaintiff). Judge Kavanewsky also found the Defendant in contempt and found both an arrearage of $9679 in support payments and of $8000 due for pendente lite counsel fees.
On July 7, 1999, the ordered payments not having been made, the Defendant was found in contempt and an arrearage was found of $33,650.44. The court ordered the immediate release of $16,500 from a criminal bond escrow for use toward payment of some of the outstanding bills.
On October 18, 1999, the Plaintiff filed a motion for contempt for the Defendant's failure to pay bills. The Defendant, at the hearing and' in his Memorandum dated December 22, 1999, admitted that he had not made the monthly mortgage payments for July 1999 and thereafter. The Defendant, though admitting that he had agreed to make these payments, claimed that his failure was not willful as he could not afford to make them.
FINDINGS AND DECISION
The court finds that the Defendant's financial circumstances are substantially the same as they were at the time of the modification of pendente lite orders in April 1999. The original order of $11,370, entered in September 1998, was reduced in April 1999 to $10,370 because the Defendant's mother had ceased CT Page 858 providing her regular $700 weekly gifts. Since April 1999, there has been no substantial change in the total amount of the Defendant's income. While in arrears of court ordered payments, the Defendant regularly and continually made payments for non-obligatory items. He has had funds available for his sport and entertainment, for gifts, for travel and dating, yet continues to claim lack of funds to pay court ordered alimony and support. Judge Kavenewsky rejected this claim in April 1999 and nothing has changed since then to warrant a different conclusion.
The Defendant's lifestyle has not changed in any respect. He has the same job. He continues to take vacations and has made plans for future vacations with his new girlfriend. During the summer of 1999, he spent seven weekends playing in polo matches in Newport and had the luxury of treatment at Derma Clinic. It is clear that, since April 1999, the Defendant's mother continues to support him and has not reduced her contributions. The Defendant works for his mother, taking care of her shopping centers, and receives a salary from her corporations for this work. She may have changed her method and form of giving, perhaps to make it more difficult to trace, but it is clear from the Defendant's ability, with his limited salary, to live a grand lifestyle, in comfort and luxury, that she continues to provide him with at least as much money as she had in the past. The claim that the money she provides, above and beyond the Defendant's salary, is loaned to him is rejected as an effort to deceive the court and is incredible. It is significant to note that the Defendant did not list any such loans as liabilities on his financial affidavit. "`The trier is the judge of the credibility of all the witnesses and the weight to be given their testimony and, therefore, has the right to accept part or disregard part of a witness' testimony. Griffin v. Nationwide Moving Storage Co.,187 Conn. 405, 422, 446 A.2d 799 (1982). In Re Hector L.,53 Conn. App. 359, 366, 730 A.2d 106 (1999).' Indeed, the trier of fact may reject even the uncontradicted testimony of a witness. Id." In Re Tricia A., 55 Conn. App. 111, 114, 737 A.2d 974
(1999.)
The court finds that the Defendant's failure to make the ordered payments was willful. The court finds an arrearage as follows: (1) For failure to make mortgage payments through December 1999 — $14,578.98. (2) For failure to pay telephone bills through 10/18/99 — $361.77. (3) For failure to pay McCormack Pool — $364.64. and (4) For failure to pay the outstanding bill of Dr. Goldberg — the balance due on said bill. CT Page 859 The Defendant is ordered to make said payments in full, together with any and all interest, penalties, and late charges which may have been imposed, on or before February 1, 2000 and is ordered to appear in court on said date, subject to incarceration, if said payments have not been made in full.
HILLER, J.