Memorandum of decision on a petition filed by the Commissioner of the Department of Children and Families to terminate the parental rights of Yenny T. and Dennis S. with respect to their minor child, Dennis; and Yenny T. and Anthony T. with respect to their minor child, Jenissa.
The Petition is Denied.
 MEMORANDUM OF DECISION
On June 28, 2000, the Department of Children and Families (D.C.F.) filed petitions to terminate the parental rights of Yenny T. and Dennis S. as to their son, Dennis; and Yenny T. and Anthony T. as to their daughter, Jenissa. Respondent mother was served with the petition in hand, respondent father Dennis S. was served via publication and Attorney Mildred Doody, who had previously been appointed to represent respondent father, Anthony T., accepted service on his behalf. Ms. T., Mr. S., and Mr. T. were represented throughout the entire proceeding by counsel. This court has jurisdiction in this matter and there is no pending action affecting custody of the children in any other court. The statutory ground alleged for the respondent mother is the same for both children — failure to rehabilitate. The statutory grounds alleged for both the respondent fathers are the same: abandonment, failure to rehabilitate, and no ongoing parent-child relationship. The respondent mother and the respondent fathers oppose the termination of their respective parental right. The trial commenced on February 27, 2001, resumed on March 9, 2001, April 23, 2001, April 30, 2001 and May 7, 2001. Evidence concluded, and closing argument were presented, on May 1, 2001.
Dennis was born on September 1991, and Jenissa on February 1994. An Order of Temporary Custody for both children was applied for and granted by the Court on October 9, 1998 (Alander J.) On October 16, 1998, the Order of Temporary Custody was confirmed (Cohn, J.). Neglect petitions were also filed.
On May 5, 1999, at a hearing on the neglect petitions, Ms. T. and Mr. S. were defaulted and Mr. T. stood silent. The children were adjudicated neglected and they were committed to the care and custody of D.C.F. until May 5, 2000 (Alander, J.). On April 5, 2000, that commitment was extended to May 5, 2001, and reunification efforts with Mr. S. only were deemed not to be appropriate (Conway, J.). On April 4, 2001, the commitment was extended to May 5, 2002 (Conway, J.).On April 26, 2000, the findings of CT Page 7922 reunification efforts with Ms. T. and Mr. T. were being appropriate were deferred and consolidated with the T.P.R. trial . . .
On February 27, 2001, when the trial started, neither Mr. S. nor Mr. T. were present in court and defaults were entered against both. The default against Mr. T. was opened and vacated on April 23, 2001, when he appeared in court. He failed to attend on any other court dates and was again defaulted on May 1, 2001.
Ms. T. started abusing cocaine in April of 1998. This abuse and other drug-related activity, and how it affected Ms. T.'s children, brought the case to the attention of D.C.F. in April of 1998. On August 25, 1998, Ms. T. entered into a service agreement with D.C.F. Ms. T. failed to comply with the service agreement and subsequently D.C.F. sought the O.T.C. that was issued on October 9, 1998. After the O.T.C. was granted Ms. T. failed to keep a number of appointments for substance abuse help. In December of 1998, Ms. T. did attend a drug evaluation which recommended in-patient treatment. Ms. T. was arrested on December 23, 1998, for possession of drug paraphernalia. After missing an intake appointment at Amethyst House, a residential drug treatment facility in New Haven in March of 1999, Ms. T. attended an intake appointment at Amethyst House on April 13, 1999. She was admitted into the program but initially failed to show up to start the program. She eventually started the Amethyst House program in June of 1999. She left the program in June of 1999, but re-entered and successfully completed the Amethyst House program on March 31, 2000. After completing the program Ms. T. went to an Oxford House on Sherman Avenue in New Haven. Oxford House has been described as a three-quarter house for recovering substance abusers. The individuals who live there work in the community, pay rent and share the household responsibilities. Ms. T. left this Oxford House and entered a second Oxford House in May of 2000, where she presently continues to live. Ms. T. successfully completed the APT Foundation out-patient substance abuse program in December of 2000. Ms. T. is today clean and sober. Ms. T. is, and has been, gainfully employed while a resident of Oxford House. Ms. T. had overnight visits with her children. However, because of Ms. T.'s failure to adhere with D.C.F. guidelines, the court on July 26, 2000, ordered overnight visits cease and that all visits be supervised (Conway J.)
Despite many D.C.F. attempts, Mr. S., a resident of the Bronx, did not contact D.C.F. until May of 1999. Mr. S. had five visits with Dennis during the fall of 1999. An interstate compact study was done because Mr. S. requested that custody of Dennis be transferred to him. Custody of Dennis was scheduled to be transferred to Mr. S. on December 1, 1999. However, on November 29, 1999, after a visit with Dennis, Mr. S. decided that he did not want Dennis anymore. Neither D.C.F. nor Dennis has had CT Page 7923 any contact with Mr. S. since.
Mr. T. is a resident of Utica, New York. After the O.T.C. was granted Mr. T. asked to have custody of Jenissa. After a study conducted by the Utica/Oneida Department of Social Services, Jenissa moved in with him on November 4, 1998. Mr. T. could not control Jenissa and asked D.C.F. to place Jenissa back with her mother. D.C.F. was unable to do this so Mr. T. in February of 1999, gave Jenissa to his cousins, the S., who live in New Jersey. The S. also felt that they could not take care of Jenissa and they returned her to D.C.F. on March 24, 1999. Mr. T. has attended only two of nine visits scheduled with Jenissa. His last visit was in July of 2000. He called and asked for a visit on February 27, 2001, the first day of trial. D.C.F. was prepared to have a visit on that day, however, Mr. T. failed to appear in court on that day. He has not called since to reschedule a visit.
 ADJUDICATORY FINDINGS
ABANDONMENT
"Abandonment focuses on the parent's conduct. . . . A lack of interest in the child is not the sole criterion in determining abandonment. . . . C.G.S. § 17a-112(j)(3)(A) defines abandonment as the [failure] to maintain a reasonable degree of interest, concern, or responsibility as to the welfare of the child. . . . Attempts to achieve contact with a child, telephone calls, the sending of cards and gifts and financial support are indicia of interest, concern, or responsibility for the welfare of the child. . . . Abandonment occurs where a parent fails to visit a child, does not display love or affection for the child, does not personally interact with the child, and demonstrates no concern for the child's welfare. . . . Section 17a-112(j)(3)(A) does not contemplate a sporadic showing of the indicia of interest, concern or responsibility for the welfare of a child. A parent must maintain a reasonable degree of interest in the welfare of his or her child. Maintain implies a continuing reasonable degree of concern." In re John G., 56 Conn. App. 12,20-21 (1999).
Mr. S's last visit with Dennis was in November of 1999. At that time Mr. S. told D.C.F. that he did not want Dennis to live with him. Since that time Mr. S. has had no contact with Dennis — no visits, no letters, no calls, no gifts. Mr. S. has never paid child support. Mr. S. as noted above also failed to attend any of the trial dates and was defaulted. Abandonment of Dennis by Mr. S. has been proven by clear and convincing evidence.
Mr. T. had custody of Jenissa for all of two months in late 1998, and CT Page 7924 early 1999. When he had difficulties with Jenissa he became frustrated yet did not seek any help. He tried to give Jenissa back to Ms. T. and, when he was unable to do that, dumped Jenissa with relatives in Jew Jersey. Mr. T's last visit contact with Jenissa was during July of 2000, nearly one year ago. This visit was one of the two of nine arranged visits that he attended. He did not call and ask for any visits until January, 2000, at which time a visit was scheduled which Mr. T. did not attend. Mr. T. has never paid child support. Mr. T. as noted above attended only one trial date and was defaulted. Abandonment of Janissa by Mr. T. has been proven by clear and convincing evidence.
FAILURE TO REHABILITATE
Statutory grounds exists to terminate parental rights when "[the parent] of a child who has been found by the superior court to have been neglected or uncared for in a prior proceeding has failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child. . . ." C.G.S. § 17a-112(j)(3)(B). In analyzing a respondent parent's rehabilitative status the court must look at the status as it relates to the particular child, and such rehabilitation must be foreseeable within a reasonable time. In re Roshawn R., 51 Conn. App. 44,54-55 (1998).
Mr. S. agreed to comply with specific steps that were ordered on May 5, 1999. Other than keeping D.C.F. aware of his whereabouts and cooperating with the Bronx Administrative Child Protection Services, Mr. S. failed to comply with the specific steps. Dennis had a myriad of psychological, social, educational and emotional needs that requires that whoever parents him have special training. That is why he is presently placed in a therapeutic foster home. Mr. S. has never sought to gain any of these skills. It is the court's finding, by clear and convincing evidence, that given Dennis's needs, Mr. S. cannot in a reasonable amount of time, become capable of effectively parenting Dennis.
Mr. T. agreed to comply with specific steps that were ordered on May 5, 1999. Mr. T. failed to comply with any of specific steps. When difficulties arose during the time when Jenissa was in his custody he did nothing to address these needs, choosing to pass her off to his cousins in New Jersey. Jenissa like her brother Dennis, has extensive psychological, social, educational, and emotional needs that require special parenting skills. She, also like her brother, is presently placed in a therapeutic foster home. Like Mr. S., Mr. T. has never sought to gain any of these skills. It is the court's finding, by clear and convincing evidence, that given Janissa's needs, Mr. T. cannot, in a CT Page 7925 reasonable amount of time, become capable of effectively parenting Jenissa.
The T.P.R. petition was filed on June 28, 2000, after Ms. T. had completed the Amethyst House program, but while she was still getting treatment at the APT Foundation. During this time she was living at the second Oxford House. From its first involvement with Ms. T. D.C.F. offered Ms. T. numerous services to overcome her substance abuse problems, help her with parenting skills, and address her social, psychological, and emotional problems. Prior to the O.T.C. being ordered Ms. T. failed to attend the APT program and also failed to abide by the service agreement that she signed. After the O.T.C. was confirmed she failed to attend Yale Child Services appointments. She failed to keep six appointments at the APT Foundation. She did not show up at Amethyst House when a bed was available to her in April of 1999. After she was admitted to Amethyst House in June of 1999, she left the program on September 3, 1999, without having successfully completing it. Specific steps were ordered on October 9, 1998 and May 5, 1999. Ms. T. failed to comply with these steps. In addition, Ms. T. was arrested on December 23, 1998 for possession of drug paraphernalia and on May 2, 1999, for Breach of the Peace. Both Dennis and Jenissa, as stated previously have extensive psychological, social, educational, and emotional needs that require special parenting skills. Ms. T. never sought to acquire these skills. It is the court's finding, by clear and convincing evidence, that given Jenissa's needs, Ms. T. cannot, in a reasonable amount of time, become capable of effectively parenting Jenissa.
NO ONGOING PARENT-CHILD RELATIONSHIP
"C.G.S. § 17a-112(j)(3)(D) provides for the termination of parental rights if, upon clear and convincing evidence, it is proven that no ongoing parent-child relationship existed in excess of one year. This part of the statute requires the trial court to undertake a two-pronged analysis, First, there must be a determination that no parent-child relationship exists, and second, the court must look into the future and determine whether it would be detrimental to the child's best interest to allow time for such a relationship to develop." In re John G.,56 Conn. App. 12, 22 (1999).
Mr. S. has not visited with Dennis since December 1999. He has had no contact at all with Dennis since that date. Dennis rarely talks about his father, but when he does it is in negative terms. There is no bond between them. It would be detrimental to Dennis to allow time for a parent-child relationship to develop. Therefore, as to Dennis and Mr. S. the ground of no ongoing parent-child relationship has been proven by clear and convincing evidence. CT Page 7926
Mr. T. has only visited Jenissa two times since he dropped her off at his relatives in New Jersey in February of 1999. Like Dennis, Jenissa does not speak of her father often, and when she does it is not in a positive manner. There is no bond between them. It would be detrimental to allow time for a parent-child relationship to develop. Therefore, as to Jenissa and Mr. T. the ground of no ongoing parent-child relationship has been proven by clear and convincing evidence.
DISPOSITION
In the dispositional phase of a termination case, the court must consider whether D.C.F. has proven by clear and convincing evidence that "termination is in the best interest of the child." It is not in the best interest of either Dennis or Jenissa to have the parental rights of Ms. T. Mr. S. or Mr. T. terminated.
In accordance with C.G.S. § 17a-112(k) the court makes the following findings:
(1) The court must look at the timeliness, nature and extent of services offered, provided and made available to the parent and child by an agency to facilitate the reunion of the child with the parents. D.C.F., the Bronx Administrative Child Protective Services, and the Utica/Oneida Department of Child Social Services all made efforts to help all three respondents with their respective problems. Except for Ms. T.'s entering Amethyst House none of the respondents took advantage of any of these services.
(2) This court finds that D.C.F. made reasonable efforts to reunite the parents with the child pursuant to the federal Adoption Assistance and Child Welfare Act of 1980, as amended. The three respondents failed to take advantage of the services offered to them to achieve reunification.
(3) The terms of any applicable court order entered into and agreed to by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order must also be addressed. There were court ordered specific steps issued for all three respondents. On May 5, 1999, the court ordered specific steps for both respondent fathers and on October 9, 1998, for the respondent mother. All three respondents failed to comply with some or all of their specific steps.
(4) The feelings and emotional ties of the child with respect to the child's parents, any guardian of the child, and any person who has exercised physical care, custody or control of the child for a least one CT Page 7927 year and with whom the child has developed significant ties must be addressed. Neither Dennis or Jenissa has any emotional ties with their respective fathers. Both Dennis and Jenissa have emotional ties with their mother. Dennis has strong emotional ties with his foster parents, the E. He calls them grandpa and grandma, although he occasionally calls Ms. E. mom and Mr. E. pop. Jenissa has been in her foster home for only approximately three months. Although she has been acting appropriately with the T., an insufficient amount of time has elapsed to determine the emotional ties Jenissa has to the T.
(5) Dennis is nine years old and Janissa is seven years old.
(6) The efforts the parent has made to adjust her or his circumstances, conduct or conditions to make it in the best interest of the child to return to such home in the foreseeable future, including but not limited to, (a) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications, or contributions, and (b) the maintenance of regular contact or communication with the guardian or other custodian of the child has been discussed previously. Mr. S. has had no contact with Dennis since November 1999. Mr. T. has had minimal contact with Jenissa since February 1999. Ms. T. has had regular contact with both her children.
(7) The final consideration is the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any person "or by the economic circumstances of the parent. None of the respondents has been prevented from maintaining a meaningful relationship with their child by any person, state agency or their economic condition.
The court must make a find by clear and convincing evidence that termination of the three respondents' respective parental rights would be in the best interest of Dennis and Jenissa. Dennis has been placed with four foster families since he has been in foster care. He has been with the E. since August of 2000. Dennis is doing very well with them and many of his problematic behaviors have ceased since he has been with them. The E. are in their seventies and are not willing to adopt Dennis. Jenissa is with her third foster family, the T., having been placed with them on March 16, 2001. Both the E. and the T. are therapeutic foster parents. Ms. Valencia Williams, a D.C.F. social worker testified that the T. are not considered a pre-adoptive foster home.
Dr. Grenier in a response to additional referral questions marked as CT Page 7928 petitioner's Exhibit two stated: "Without a permanent adoptive home available to the children, it would be clinically detrimental to them to have their parental rights terminated, since they do have a parent/child relationship with their mother, and there would be no permanent parental replacement for her in their lives." Dr. Grenier stated this again in her testimony when she testified that"without a permanent adoptive home available to the children, it would be clearly detrimental to them to have the T.P.R. granted." (T. pg. 46). But Dr. Grenier qualified her opinion by stating that even if permanent homes were not found if D.C.F. had a plan that identified permanent homes that it would be in the children's best interest to grant the T.P.R. But the plan can not be a wish. There would have to be ". . . x, y, z, potential placements. And these people are going to be available, are interested in being available, are planning to adopt and this is a process." (T. pg. 46) "[C]ourts are entitled to give great weight to professionals in parental termination cases." In re Christina V., 38 Conn. App. 214 (1995) at 221. Ms. Williams testified that seven possible adoptive homes for either child have been identified since August of 2000. Yet neither child has visited with any of these families. In addition when it was decided that Jenissa needed to be placed with another family, she was not placed with any of the seven identified possible adoptive homes. This is not a process.
The adjudicatory grounds have been proven by clear and convincing evidence. However, the petitioner has not sustained its burden of proving by clear and convincing evidence that it is in the best interest of either Dennis or Jenissa that the parental rights of the respondents be terminated.
It is the further order of the court that reunification efforts with both Mr. S. and Mr. T. are not appropriate. Reunification efforts with Ms. T., however, are appropriate.
Gerard Esposito Judge of the Superior Court