A MEMORANDUM OF DECISION
On February 23, 2001, the Department of Children and Families (DCF) filed petitions to terminate the parental rights of Fanita Scott to her daughter, Brenda A.[2] Ms. Scott was properly served with the petition and represented by counsel throughout the court proceedings.[3] This court has jurisdiction in this matter and there is no pending action affecting custody of the child in any other court. The statutory grounds alleged as to respondent mother are abandonment, failure to rehabilitate and no ongoing parent-child relationship.
The court makes the following findings of fact and conclusions of law by clear and convincing evidence.
Brenda was born on December 1999. At the time of Brenda's birth both mother and infant tested positive for cocaine. Brenda was the seventh child born to Ms. Scott, none of whom are in Ms. Scott's care. DCF sought and obtained an order of temporary custody for Brenda on December 22, 1999. The child was adjudicated neglected and communed to DCF on March 27, 2000. The child has remained committed to DCF.
Brenda has been identified as a medically complex child. Her medical problems include severe allergies, severe gastric reflux, right sided CT Page 2194 weakness, vision problems and significant cognitive and developmental delays.[4]
Brenda has remained in the same foster home since birth. Her foster family is very bonded to her and she to them. If Brenda were to become free for adoption the foster family has expressed a desire to adopt Brenda.
Ms. Scott has a chronic history of substance abuse. Ms. Scott has used cocaine daily or every other day since age twenty one and has abused alcohol since the age of nineteen. Her only periods of sobriety occurred when she is incarcerated (her last period of incarceration was from at least February of 2001 until November of 2001)[5] and in 1999 when she spent fifty two days inpatient at Connecticut Valley Hospital. (CVH)[6]
Ms. Scott criminal record consists of convictions for possession of narcotics, multiple assault convictions, failure to appear in court and a robbery conviction.[7]
Ms. Scott has never maintained stable employment or housing. She has never managed her own finances and apparently has relied on others for financial support. Psychological testing indicated that Ms. Scott is mildly mentally retarded. In addition to her cocaine and alcohol dependence, Ms. Scott suffers from depression and anxiety.
DCF made reasonable efforts to attempt to reunify Ms. Scott and Brenda.[8] In addition to the in patient program at CVH, Ms. Scott was also referred to Mother's Project, a substance abuse treatment facility, Crossroads, an in patient substance abuse program, Oxford House, and Connecticut Birth to Three Systems for Child. A visitation schedule was established to give Ms. Scott weekly supervised visits with Brenda. Due to Ms. Scott's lack of consistently attending visits and not calling to reschedule, visits were decreased to biweekly and then eventually discontinued.[9]
STATUTORY GROUNDS
Abandonment
A child is deemed abandoned under Connecticut law when the child "has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child." C.G.S. § 17a-112 (J)(3)(A).
Brenda was placed in DCF care upon her discharge from the hospital at the time of her birth. Since Brenda's birth in December of 1999, Ms. CT Page 2195 Scott has visited with Brenda approximately ten times. From December of 1999 to March of 2000 there were seven scheduled visits. Ms. Scott cancelled one visit and left one visit early. Ms. Scott failed to appear for an April 13, 2000 visit.[10]
Although Ms. Scott did make a few periodic telephone calls to DCF to inquire about Brenda, DCF has clearly proven statutory abandonment. Less than ten supervised visits from the time of Brenda's birth to the filing of the termination of parental right petition in February of 2001 does not reflect a reasonable degree of interest, concern or responsibility as to Brenda's welfare. Similar to the respondent mother in In re AngellicaW., 49 Conn. App. 541 (1998), Ms. Scott "pursued her [criminal], romantic and substance abuse interests with greater devotion and vigor than she engaged in establishing or maintaining a relationship with Angellica; the respondent completely abdicated her parental role. . . ." Id. At 552.
Failure to Rehabilitate
Statutory grounds exist to terminate parental rights when a child has been found by the superior court to have been neglected or uncared for in a prior proceeding and the parent failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of a child. C.G.S. § 17a-1129 (j)(3)(B). In analyzing a respondent parent's rehabilitative status the court must look at the "status as it relates to the needs of the particular child, and further, such rehabilitation must be foreseeable within a reasonable time." (Citation omitted.) In re RoshawnR., 51 Conn. App. 44, 54-55 (1998). DCF has met its burden as to this statutory ground.
Ms. Scott has suffered from severe cocaine and alcohol addiction for over ten years. Sobriety has been nothing more than short lived and fleeting and respondent mother has never substantively addressed her depression or anxiety disorder. When not incarcerated, Ms. Scott lives a transient, unstable lifestyle. Ms. Scott does not parent her other six children and has never been a parent to Brenda. To allow further time to elapse to see if Ms. Scott could effectively address her substance abuse and mental health issues and to rehabilitate to the point of becoming self sufficient and eventually a parent to Brenda would be futile and clearly not in Brenda's best interest. Brenda's specialized needs and Ms. Scott's historical substance abuse and its inevitable accompanying lifestyle mandates a finding that respondent mother has failed to rehabilitate. In re Tabitha P., 39 Conn. App. 353 (1995).
No Ongoing Parent-Child Relationship
CT Page 2196
Statutory grounds exist to terminate parental rights when "there is no ongoing parent-child relationship, which means the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child . . ." C.G.S. § 17a-112 (j)(3)(D).
As indicated above, Ms. Scott has never parented Brenda. Respondent mother's only contact with Brenda was less than a dozen of supervised visits in Brenda's entire young life. Given the lack of contact between mother and child and Brenda's young age, there is obviously no parentchild relationship. Brenda's need for permanency and the magnitude of obstacles that would have to be successfully addressed for respondent mother to become a parent to Brenda, makes it detrimental to Brenda's best interest to allow further time to elapse to see whether a parent-child relationship could be established.
DISPOSITION
It is in Brenda's best interest to terminate the parental rights of Ms. Scott. It arriving at this conclusion, the court makes the following findings, pursuant to C.G.S. § 17a-112 (k).
(1) DCF offered varied and reasonable services to Ms. Scott to facilitate reunification between Ms. Scott and Brenda. Contact between Ms. Scott and Brenda, via supervised visits was attempted. Respondent mother could not or would not choose to remain sober and to obtain the necessary treatment and to make the necessary alterations in her lifestyle that were necessary for Brenda to be reunited with Ms. Scott.
(2) For reasons stated within this opinion, DCF made reasonable efforts to reunite Ms. Scott and Brenda pursuant to the federal Adoption Assistance and Child Welfare Act of 1980, as amended.
(3) There were court ordered specific steps entered on September 12, 2001. Ms. Scott complied. with the steps to the extent that she did engage in a series of classes and programs offered in prison. To her credit, Ms. Scott successfully completed anger management, parenting, substance abuse classes while incarcerated in 2001. Upon her release from prison however, Ms. Scott failed to continue with the requisite treatment and counseling, she failed to maintain sobriety and she failed to avoid further criminal behavior. Ms. Scott did not obtain appropriate housing or legal income and did not maintain regular contact with DCF or the court. CT Page 2197
(4) Brenda is bonded to her foster family and the foster family is bonded to Brenda. If Brenda were to become free for adoption, the foster family would adopt Brenda. Brenda has no emotional ties to Ms. Scott.
(5) Brenda is twenty six months old. She has spent her entire life in foster care. Reunification with the recently identified father, Mr. Gorham, is in the process of being attempted. It is unclear or unknown what, if any, relationship exists between Ms. Scott and Mr. Gorham. Reunification with Mr. Gorham should not occur if Mr. Gorham is in a relationship with Ms. Scott. The potentially uncensored access Ms. Scott would have to Brenda is a concern to this court and needs to be considered in future permanency plans for the child.
(6) Ms. Scott has done nothing, since her release from prison in 2001, to adjust her lifestyle to make it in Brenda's best interest to be reunified with respondent mother. This court has already commented on how little contact there has been between Ms. Scott and Brenda and the severity of obstacles that exist that prohibit reunification of respondent mother and child.
(7) This court is unaware of any actions by Mr. Gorham or anyone or anything else, which has prevented Ms. Scott from maintaining a meaningful relationship with Brenda. It is Ms. Scott's chronic substance abuse, unaddressed mental health issues and the inevitable lifestyle that accompanies such conditions that has precluded reunification with her child.
CONCLUSION
It is hereby ordered that the parental rights of Ms. Fanita Scott as to Brenda A. be terminated. The child remains committed to DCF, pending disposition of the petition, terminating the parental rights of respondent father.
 ___________________ Bernadette Conway, Judge of the Superior Court