MEMORANDUM OF DECISION
On August 10, 2001, the Department of Children and Families (DCF) filed CT Page 3739 a petition to terminate the parental rights of Malina L and Andre W as to the daughter, Sabrina. The respondent parents were properly served with the petition and both were represented by counsel. This court has jurisdiction in this matter and there is no pending action affecting custody of the child in any other court. The statutory grounds alleged as to Ms. L are a failure to rehabilitate, no ongoing parent-child relationship and `Grounds E' of C.G.S. § 17a-112 (j)(3). The statutory grounds alleged as to Mr. W are abandonment, failure to rehabilitate, no ongoing parent-child relationship and `Ground E' of C.G.S. §17a-112 (j)(3). Trial commenced and concluded on March 12, 2002.[2]
The court makes the following findings of facts and conclusions of law by clear and convincing evidence.
Sabrina was born on May 2000. Both mother and child tested positive for cocaine at the birth of Sabrina. Sabrina was also HIV positive at birth and was deemed a medically fragile child.[3] DCF invoked a ninety six hour hold on Sabrina on May 8, 2000. An order of temporary custody was obtained and on August 22, 2000 Sabrina was adjudicated neglected and uncared for and on August 30, 2000, she was committed to DCF. The child has remained committed to DCF to date.
Sabrina is Ms. L's fourth child and Mr. W's third child. Respondent parents' parental rights were terminated as to twins, Andre and Andrea W., on August 30, 2000.[4] (See State's exhibit B, p. 3)
Ms. L has had a substance abuse history dating back to 1995. Mr. W has a history of abusing alcohol and drugs and there is a history of domestic violence between respondent parents. Ms. L was diagnosed with a life threatening illness in 1995.
DCF made reasonable efforts to locate the respondent parents. Respondent parents were canvassed on court ordered specific steps on August 30, 2000. (State's exhibit A and B). From May until September of 2000 Mr. W kept two scheduled visits with Sabrina. His whereabouts were unknown to DCF until September of 2000, when Mr. W was incarcerated. Mr. W remained incarcerated until July 30, 2001 for a violation of a protective order and a failure to appear. While incarcerated, Mr. W did not maintain contact with DCF. Since his release from prison Mr. W has not kept consistent contact with DCF nor consistent visits with Sabrina.
Ms. L remained residing in the same residence until June of 2001. She was evicted and in July of 2001 was using Sabrina's paternal grandmother's address as a mailing address. A DCF social worker testified that respondent parents gave DCF beeper numbers by which they could be contacted. The beepers would sometimes be operational and at other times CT Page 3740 the beepers would not be in service.
DCF made reasonable efforts to reunify the respondent parents with Sabrina.
Both parents were offered monthly supervised visits with Sabrina. From May of 2000 until July of 2001 there were twenty four visits arranged between Ms. L and Sabrina. Ms. L kept only twelve of the twenty four visits. Mr. W visited with Sabrina only two times from May until September of 2000. Once incarcerated in September of 2000, Mr. W did not request visits and since his release from prison in July of 2001 he has only kept two out of nine schedule visits. Respondent father did not call DCF to cancel or to reschedule the seven missed visits. Ms. L also kept only two of the nine visits scheduled since July of 2001.[5]
State's exhibits C, pp. 4, 8-9 and D, pp. 2-3, lists the various referrals and services offered to respondent parents. Court ordered specific steps were entered on August 30, 2000. The respondent parents did not comply with any of the referrals made nor did they substantially comply with the court ordered specific steps.[6]
ADJUDICATION
 Abandonment
A child is deemed abandoned when "the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child." C.G.S. § 17a-112 (j)(3)(A). Mr. W has abandoned Sabrina. He has visited with Sabrina only four times since her birth. There has been no inquiry regarding Sabrina's well being, there has been no financial or emotional support of the child. Statutory abandonment has been proven.
Failure to Rehabilitate
Statutory grounds exist to terminate parental rights when a chid has been found by the superior court to have been neglected or uncared for in a prior proceeding and the parent has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of a child. C.G.S. §17a-112 (j)(3)(B). In analyzing a respondent parent's rehabilitative status the court must look the "status as it relates to the needs of the particular child, and further, such rehabilitation must be foreseeable within a reasonable time." (Citation omitted). In re Roshawn R.,51 Conn. App. 44, 54-55 (1998). CT Page 3741
Ms. L has not addressed her substance abuse lifestyle. The multiple referrals and programs offered have never been utilized by Ms. L (See State's exhibit C pp. 4, 8; State's exhibit D p. 2).
There is no evidence that respondent mother's use of substances and failure to engage in treatment will change any time soon. Ms. L has not engaged in domestic violence counseling, she has not obtained parenting or individual counseling. The reasons why she does not have her three older children in her care are the same reasons why DCF now seeks to terminate her parental rights as to Sabrina. Ms. L has never been a parent to Sabrina. Given respondent mother's lack of insight into her destructive lifestyle, and a lack of motivation to effectuate any positive changes, Ms. L will never be able to parent any child.
Mr. W has not addressed his substance abuse issues. He is not employed and remains in a relationship with Ms. L with never having obtained domestic violence counseling. The unaddressed issues that existed at the time of the termination of his parental rights as to the twins continue to go unaddressed to date. A failure to rehabilitate has been proven by clear and convincing evidence.
No ongoing parent-child relationship
Statutory grounds exist to terminate parental rights when "there is no ongoing parent-child relationship, which means the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child . . ." C.G.S. § 17a-112 (j)(3)(D).
Neither respondent parent has ever cared for Sabrina. The parents have only seen Sabrina twice since July of 2001, one occasion being for the court ordered psychological and parent-child interactional evaluations. Since her birth in May of 2000 Sabrina has visited with Mr. W less than a half a dozen times and with respondent mother approximately fourteen times. Sabrina does not look to either of her biological parents for comfort or support. There are a magnitude of obstacles and issues that would have to be successfully addressed for either Ms. L and Mr. W to become a parent to Sabrina. The unlikeliness of either parent at this point in their lives making the necessary changes that would be needed to be made, in order to become parents to Sabrina, does not make it in the child's best interest to allow further time to elapse to see whether a parent-child relationship could be established. CT Page 3742
`Grounds E'
Sabrina is clearly under the age of seven years. She has previously been adjudicated a neglected and uncared for child. Both respondent parents have failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable period of time, considering Sabrina's age and needs that either parent could assume a responsible position in Sabrina's life. As indicated earlier, both respondent parents' parental rights were terminated on two other children pursuant to a petition filed by the Commissioner of Children and Families. Therefore, `Ground E' has been proven by clear and convincing evidence.
DISPOSITION
In the dispositional phase of a parental right termination case, the court must consider whether DCF has proven by clear and convincing evidence that `termination is in the best interest of the child.' It is in Sabrina's best interest to have respondent parents' parental rights terminated. In support of this finding the court considers the following, pursuant to C.G.S. § 17a-112 (k).
(1) The court must look at the timeliness, nature and extent of services offered, provided and made available to the parent and child by an agency to facilitate the reunion of the child with the parent. State's exhibits C and D outline the services and programs offered to respondent parents to address their issues. Neither parent was amendable to treatment, counseling or even consistent visitation.
(2) This court finds, for reasons discussed previously, that DCF made reasonable efforts to reunite the respondent parents with the child pursuant to the federal Adoption Assistance and Child Welfare Act of 1980, as amended.
(3) There were court ordered specific steps entered on August 30, 2000. Respondent parents failed to substantially comply with visitation, counseling, remaining substance abuse free, stable housing, employment and cooperating and keeping in contact with DCF.
(4) Dr. Meier conducted psychological evaluations of respondent parents and a parent-child interactional evaluation of the parents with Sabrina. Dr. Meier concluded: "The reactions of the parents and the child were similar to what would be expected between acquaintances. There was no evidence of any bond or attachment. She [Sabrina] clearly does not see mother and father as psychological parents." (State's Exhibit E p. 8) CT Page 3743
DCF testified that Sabrina is bonded to her foster mother. She is in a nurturing home and the foster mother would like to adopt Sabrina. Sabrina calls the foster mother "mommy".[7]
(5) Sabrina is almost two years old. She deserves to leave the limbo of foster care and to find permanency in adoption.
(6) The respondent parents have done virtually nothing to adjust their circumstances, conduct or conditions to make it in the best interest of Sabrina to be returned to their home in the foreseeable future. There has been no substance abuse treatment, no domestic violence counseling and no mental health treatment sought by either respondent parent. Visitation between the respondent parents and Sabrina has been inconsistent and scant. Respondent parents have not maintained consistent contact with DCF.
(7) This court is unaware of any person, agency or economic circumstance which has prevented either respondent parent from maintaining a meaningful relationship with Sabrina. Respondent parents have chosen to remain in a lifestyle riddled with substance abuse, domestic violence and untreated mental health issues and therefore this court has no choice but to find that it is in Sabrina's best interest to terminate the respondent parents' parental rights.
CONCLUSION
Based on the foregoing findings, the court determines that it is in the best interest of Sabrina to terminate the parental rights of Malina L and Andre W. Accordingly, the court hereby grants the parental rights termination petition. The court orders that the Commissioner of DCF is appointed statutory parent for the chid. The commissioner shall file with the court no later than thirty days following the date of judgment, a written report of efforts to effect a permanent place for Sabrina and file further reports as required by state and federal law.
The court approves the permanency plan of termination of parental rights and adoption. The plan is reasonable and DCF is making reasonable efforts to effectuate the plan.
Bernadette Conway, Judge of the Superior Court