MEMORANDUM OF DECISION
On January 3, 2002, the Department of Children and Families (DCF) filed a petition to terminate the parental rights of Mayra M and Rosco J as to their son, Joshua. The respondent parents were properly served with the petition and Ms. M was represented by counsel throughout the court proceedings. This court has jurisdiction in this matter and there is no CT Page 6505 pending action affecting custody of the child in any other court. The statutory grounds alleged as to both respondent parents are abandonment and a failure to rehabilitate. The trial to terminate the parental rights of respondent parents commenced and concluded on May 7, 2002.
The court makes the following findings of fact and conclusions of law by clear and convincing evidence.
Joshua was born on November 2000. At the time of his birth a toxicology screen performed on the respondent mother showed the presence of cocaine in her body. Respondent mother admitted to smoking two days before delivery and told DCF that she used "a dime bag of cocaine in every two cigarettes that she smoke(d)." State's exhibit C p. 2. Both respondent mother and Joshua were admitted to Crossroads, an in patient substance abuse program for women which allow mothers to receive treatment and have their children remained with them. Ms. M and Joshua were admitted to Crossroads on November 10, 2000. On November 17, 2000 respondent mother made an authorized departure from Crossroads with Joshua. Respondent mother and Joshua's whereabouts were unknown for approximately four days. On November 21, 2000 DCF found respondent mother and Joshua at the maternal grandmother's home. DCF filed neglect petitions on November 22, 2000. The child was adjudicated neglected on December 8, 2000 and six months of protective supervision was court ordered. Respondent mother was incarcerated in late December of 2000. On January 2, 2001 the order of protective supervision was modified and the child was committed to DCF.[2]
The child has remained committed to DCF to date.
DCF has made reasonable efforts to locate and reunify the respondent parents with Joshua.
Ms. M remained incarcerated from December of 2000 until March of 2001. She was released from prison and placed in Elm City Women Program, an in patient substance abuse program for women and their children.[3]
Respondent mother, without authorization, left the program on March 26, 2001. Respondent mother was whereabouts unknown from March of 2001 until June of 2001, when a prison counselor called DCF to inform DCF that Ms. M was in prison.[4] Ms. M has remained incarcerated since June of 2001 and has a release date for sometime in the year 2005 and a parole eligibility date of June of 2003.[5] DCF has provided monthly prison visits between respondent mother and Joshua since August of 2001.
Ms. M identified the biological father as Rosco J. Respondent mother initially supplied DCF with a name and a local address. DCF proceeded to the address given only to find that it was an abandoned building. DCF was not furnished with a date of birth or a social security number or the identity of any paternal relatives. In a follow up conversation with CT Page 6506 respondent mother in 2002, respondent mother revealed that the putative father may be in Manhatten, New York. DCF called the New York Welfare Agency, the New York Child Support Unit, the New York City Department of Corrections and the New York Telephone Company in an attempt to locate a Rosco J. DCF was unable to locate any Rosco J. DCF made reasonable efforts to locate Rosco J.[6]
DCF has made reasonable efforts to reunify Joshua with the respondent parents. As indicated previously, respondent mother was admitted to Crossroads with Joshua in November of 2000. Respondent mother did attend an initial intake evaluation at the Mother's Project, an out patient substance abuse program in November of 2000. She did not follow through with a subsequent appointment on December 4, 2000. Respondent mother did attend a December 19, 2000 appointment but she was arrested and incarcerated on December 20, 2000. Ms. M was placed in a second in patient facility upon release from prison in March of 2001 with the possibility of Joshua eventually coming to reside with his mother in the program. Respondent mother left the second in patient program and was arrested on various charges, including felony drugs charges in June of 2001. She received a four year prison sentence. Ms. M reincarceration in June of 2001, except for monthly visits with Joshua, made her unable to benefit from further reunification efforts.
As indicated previously, DCF was not able to locate Mr. J. He was therefore unable or unwilling to benefit from reunification efforts.
ADJUDICATION
 Abandonment
A child is deemed abandoned under Connecticut law when the child "has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child." C.G.S § 17a-112 (j)(3)(A). "Attempts to achieve contact with a child, telephone calls, the sending of cards and gifts and financial support are indicia of `interest, concern or responsibility' for the welfare of the child." In re Migdalia M.,6 Conn. App. 194, 208-09, cert. denied, 199 Conn. 809 (1986).
Respondent mother abandoned Joshua. From November of 2000 until the termination of parental rights petition was filed in January of 2002, there had been only one month where respondent mother was not either whereabouts unknown or incarcerated. While it is conceded that "a parent's incarceration by itself does not constitute abandonment", In reRoshawn R., 51 Conn. App. 44, 53 (1998), it is equally true that the issue of abandonment focuses on the parent's conduct. "The commonly CT Page 6507 understood general obligations of parenthood entail these minimum attributes: (1) express love and affection for the child; (2) express personal concern over the health, education and general well-being of the child; (3) the duty to supply the necessary food, clothing, and medical care; (4) the duty to provide an adequate domicile; and (5) the duty to furnish social and religious guidance. (Citations omitted; internal quotation marks omitted). In re Kezia M., 33 Conn. App. 12, 17-18,683 A.2d 1122 (1993)" Id. at 53. Respondent mother has not met any of the above mentioned needs, as to Joshua, since December of 2000. For the first year of Joshua's life his mother only visited with him six times. Since Joshua had come into DCF care she sent only one card to Joshua. From March to June of 2001, respondent mother was whereabouts unknown and except for one telephone message with no follow up information to DCF in May, respondent mother made no attempt to visit or to inquire about Joshua. Ms. M decision to leave two different in patient treatment programs, facilities that would have allowed her to keep Joshua with her, and her continued involvement in the criminal justice system resulted in her receiving a protracted period of incarceration and therefore she was unavailable to Joshua except through prison visits. Abandonment has been proven.
Mr. J has been whereabouts unknown to both DCF and the child. He has never had any contact with Joshua. Statutory abandonment has been proven.
Failure to Rehabilitate
Statutory grounds exist to terminate parental rights when: "[the parent] of a child who has been found by the superior court to have been neglected or uncared for in a prior proceedings has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the Life of the child . . ." C.G.S. § 17a-112 (j)(3)(B). In analyzing a respondent parent's rehabilitative status the court must look at the status as it relates to the needs of the particular child, and such rehabilitation must be foreseeable within a reasonable time. In re Roshawn R., 51 Conn. App. 44,54-55 (1998).
Ms. M, to her credit, while imprisoned, has successfully engaged in Tier 1 and Tier 2 programs, which are prison substance abuse treatment programs. Respondent mother also attended and completed parenting classes while in prison. Her goal is to be released from prison and placed in a halfway house where she can continue to receive substance abuse treatment and gradually re-integrate back in to the community. Her release date from prison is unknown except that she is eligible for parole in June of CT Page 6508 2003 and has a maximum release date for 2005.[7]
Even assuming that respondent mother is successful in obtaining an earlier than documented release from prison and placed in a halfway house, her ability to assume a responsible position in Joshua's life will not come in a reasonable period of time. Respondent mother is committed to remaining substance abuse free after leaving prison. Time will only tell if she succeeds in maintaining sobriety and avoiding further criminal behavior. Joshua is one and one half years old. He has spent all but approximately one to two months of his life in foster care. It is unreasonable to keep Joshua in the limbo of foster care when it is unknown when respondent mother's release date from prison will be and with the possibility that it could still be over a year away. It is also unreasonable to keep Joshua waiting for permanency to see whether Ms. M has the ability to establish a life outside the confines of prison that would be free of substance abuse and any further criminal behavior. Respondent mother's quest for rehabilitation is commendable but does not come in time for her to be a parent to Joshua.
Mr. J has never had involvement in Joshua's life. His identity, other than a name, is unknown and he is therefore not capable of being a resource or a parent to Joshua.
DISPOSITION
In the dispositional phase of a termination of parental rights trial, the court must consider whether DCF has proven by clear and convincing evidence that "termination is in the best interest of the child." It is in Joshua's best interest to have respondent parents' parental rights terminated.
In accordance with C.G.S. § 17a-112 (k) the court makes the following findings:
(1) The court must look at the timeliness, nature and extent of services offered, provided and made available to the parent and child by an agency to facilitate the reunion of the child with the parents.
Ms. M was given two opportunities to address her substance abuse issues, in patient, while keeping Joshua in her care. She discharged herself from both programs prematurely and ended up incarcerated for a lengthy prison sentence. Out patient treatment was also offered in November of 2000 but respondent mother did not follow through with her appointments and was eventually incarcerated. Monthly jail visits between mother and child have occurred since August of 2001. CT Page 6509
Mr. J has not made himself available to Joshua or DCF. Therefore no services or programs were provided.
(2) This court finds, for reasons discussed previously, that DCF has made reasonable efforts to reunite the parents with the child pursuant to the federal Adoption Assistance and Welfare Act of 1980.
(3) Specific steps were court ordered for respondent mother in January of 2001. There was virtually no compliance with the specific steps by respondent mother.
Mr. J absence from the court proceedings, from Joshua's life and from DCF services made court ordered specific steps impossible.
(4) Joshua is not bonded to either respondent parent. During a court ordered parent-child interactional evaluation, Dr. Haymes observed that although Ms. M tried to engage Joshua, "there really is no substantial relationship for this child to this mother at present." State's exhibit A, p. 10. Dr. Haymes also concluded that: "The first twelve months outside of prison are the period of highest risk for relapse. The fact that her being pregnant, and then having an infant child did not substantially impact her addiction does not bode well for rapid recovery." State's exhibit A, p. 12. To allow further time to elapse to see whether a parent-child bond could form, Dr. Haymes concluded that: "If this mother had a better track record and more skills in place that would encourage a belief in her ability to achieve an early and enduring abstinence then it might be worth waiting a little longer. However, unfortunately this is not the case for this child and mother." State's exhibit A, p. 13.
Mr. J has had no contact with Joshua.
(5) Joshua is a happy and healthy one and one half year old. DCF is exploring placing Joshua with respondent mother's distant cousin who has recently presented as a promising adoptive resource for Joshua. If the relative placement is not successful DCF believes Joshua's age makes it highly likely that they can find a non-relative adoptive family for him. It is imperative that permanency in adoption be sought aggressively by DCF before Joshua's age becomes an impediment.
(6) Ms. M has successfully completed substance abuse and parenting programs while in prison. The only consistent contact between respondent mother and Joshua have been when respondent mother has been incarcerated, through monthly prison visits facilitated by DCF.
Mr. J has made no contact with either DCF or with Joshua. CT Page 6510
(7) This court is not aware of any person, agency, or economic circumstance that has prevented respondent parents from maintaining a meaningful relationship with Joshua. Respondent mother chose to leave treatment and re-engage in both the use and the sale of drugs. She was arrested and imprisoned for four years. Joshua should not be forced to live in the limbo of foster care waiting for respondent mother to leave prison and attempt to re-engaged back into society, staying substance abuse free and avoiding further criminal activity. Joshua deserves to leave the limbo of foster care and find permanency in adoption.
CONCLUSION
It is in Joshua's best interest to terminate the parental rights of the respondent parents. Therefore the parental rights of Myra M and Rosco J are hereby terminated. The Commissioner of DCF is appointed statutory parent. It is further ordered that within thirty days of this judgment, DCF is to file a written report of efforts to effect a permanent placement for Joshua and file further reports as required by state and federal law.
The court approves the permanency plan of adoption, finds that it is reasonable and that DCF is making reasonable efforts to effectuate said plan.
______________________________________________ Bernadette Conway, Judge of the Superior Court