[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE' PROCEEDING FOR TERMINATION OF PARENTAL RIGHTS
CT Page 9060
The Commissioner of the Department of Children and Families (hereafter Commissioner or DCF) has filed petitions to terminate the parental rights of Becky M and Dino M to their children Justin, age 10, Taylor, age 8, Savannah, age 7, Demery, age 4, Danae, age 4, and Dean, age 3. The petitions are predicated upon the following grounds: 1) abandonment; 2) failure to rehabilitate after a prior court finding of neglect; and 3) no on-going parent-child relationship. The findings made by the court in this case are predicated upon clear and convincing evidence.
 I. Background Information: Prior Neglect Case and Adjudication A. The Neglect Petitions filed on August 25, 1999
Respondents Becky M. and Dino M have a significant history of abusing illegal drugs. On August 25, 1999, DCF filed Neglect Petitions alleging parental neglect as to each child. Each petition included the specific allegation that the particular child had been permitted to live in conditions and circumstances injurious to the child's well being in that the mother admitted to being an active user of crack cocaine (2 bags per week), heroin (5 bags per day) and methadone (100 m.g. per day). The petitions contained the further charge that the child's father was aware of respondent mother's condition, and yet permitted the child to be in her care.
The Neglect Petitions for Demery and Danae, born on October 1997, and for Dean, born on June 1999, contained the additional allegation that at their birth they and their mother tested positive for opiates, cocaine and methadone. The petition for Dean, born on June 1999, included the further charges that Dean was a high risk baby due to drug withdrawal symptoms and that his parents were not able to care for him.
 The Orders of Temporary Custody
In conjunction with litigating the Neglect Petitions, DCF on January 20, 2000, sought and obtained Orders of Temporary Custody which temporarily transferred the legal custody of the children to the department for their safe-keeping. DCF then placed the children in temporary foster homes, pending the rehabilitation of their parents.
 B. Disposition of Neglect Petitions: Commitment; Specific Steps for Rehabilitation
CT Page 9061
On January 28, 2000, the honorable Judge Conway, acting on the Neglect Petitions, adjudicated Justin, Taylor, Savannah, Demery, Danae, and Dean, as neglected and committed them to the legal custody of DCF for a twelve-month period.[1] Furthermore, the court issued "specific step" orders directed to respondents Becky M and Dino M to assist them in rehabilitating themselves preparatory to seeking the return of their children. In this regard the court ordered, inter alia, that they 1) keep all appointments set by or with DCF, and cooperate with home visits; 2) sign appropriate releases 3) participate in individual and parenting counseling; 4) submit to substance abuse assessments and follow treatment recommendations, including no abuse of substances; and 5) secure and maintain adequate housing and income. Although neither respondent was present in court when the orders were entered, they were informed of the orders in a timely manner.
 II. The Petitions to Terminate Parental Rights
After concluding that Becky M and Dino M. were not complying sufficiently with the specific steps designed to facilitate their children's return, and that the children's best interest would be served by terminating their parents' parental rights, the Commissioner on February 26, 2001, filed the Petitions to Terminate Parental Rights to each of their children.
As stated earlier, the Commissioner cited three grounds as supporting its Petition to Terminate Parental Rights; namely, 1) abandonment; 2) the parents' failure to rehabilitate after a prior court finding that they have neglected each child; and 3) the absence of a parent-child relationship.[2]
The court shall now review the facts of each ground of the petition as they existed prior to February 28, 2001 — the date of the filing of the Petition to Terminate Parental Right. The first ground is that of abandonment.
 A. Abandonment
Abandonment is defined by our child protection statute as a parent having ". . . failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child." Conn. Gen. Stat. Sec.17a-112 (j)(3)(A). A lack of interest in the child is not the sole criterion in determining abandonment. Attempts to achieve contact with a child, telephone calls, the sending of cards and gifts, and financial support are indicia of interest, concern or responsibility for the welfare of a child. Abandonment occurs where a parent fails to visit a CT Page 9062 child, does not display love or affection for the child, does not personally interact with the child, and demonstrates no concern for the child's welfare. In re Roshawn R., 51 Conn. App. 44, 52 (1998). Dino and Becky M deny the claim that they have abandoned their children.
 1. The Claim of Abandonment by Respondent Dino M.
In support of its position of abandonment by respondent Dino M, DCF argues that he had not visited nor had any contact with the children from August 2000 to October 2001. However, at a visit at DCF in October and one in November of 2000, he did see the children, and he gave them a gift. Nevertheless, given the paucity of contact with his children, the court finds that DCF has proved that respondent Dino M legally has abandoned them.
 2. The Claim of Abandonment by Respondent Becky M.
Becky M. visited the children almost every week during the months of February, March, April, May, June, July and August of the year 2000. These visits occurred under DCF supervision either at the DCF office, at a local fast food restaurant, or at a park site.
In September of 2000 Becky M entered an in-patient drug treatment facility in Hartford, Connecticut where at the time of the trial in this case she was still enrolled. Although she requested DCF to transport the children to the treatment facility to visit with her there, DCF refused to do so. The reason given by DCF was the number of her children involved in the transport. Becky M continued to reside at the drug treatment program in Hartford where she remained at the date of the trial of this case. Becky M also wrote numerous letters to her children until DCF informed her that the letters would be placed in a Life Book which the children could read later — when emotionally they are able to do so.
Although the Petition to Terminate Parental Rights was filed on February 26, 2001, Becky M. continued to show love of and interest in her children.
Accordingly, the court finds that DCF has not proved by clear and convincing evidence that Becky M legally has abandoned her children.
 B. Failure to Rehabilitate after Prior Adjudication of Neglect
The Commissioner has alleged as another ground for termination that the parents have failed to rehabilitate themselves after their children have been adjudicated as neglected in a prior proceeding. This ground for CT Page 9063 termination, based upon a prior adjudication of neglect and a failure of personal rehabilitation, is clearly articulated in our statutes. Conn. Gen. Stat. § 17a-112 (j)(3)(B) states that in part that
 [t]he Superior Court . . . may grant a petition [to terminate parental rights] if it finds by clear and convincing evidence that . . . the child . . . has been found by the Superior Court . . . to have been neglected . . . in a prior proceeding . . . and the parent of such child has been provided with specific steps to take to facilitate the return of the child to the parent . . . and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child."(Emphasis added.)
As stated earlier, the filing of this termination of parental rights case was preceded by a prior adjudication on January 28, 2000, on the Neglect Petitions, that Justin, Taylor, Savannah, Demery, Danae and Dean were neglected by their parents, respondents Dino M and Becky M. The disposition in the Neglect cases was commitment of the legal custody of Justin, Taylor, Savannah, Demery, Danae and Dean to DCF for their safe keeping, as well as the imposition of specific steps for their parents preparatory to seeking their return.
 1. Review of Specific Steps
As stated previously, upon the adjudication of the Neglect Petitions, the court ordered that the respondent parents undertake the following specific steps, among others: 1) keep all appointments set by or with DCF, and cooperate with home visits; 2) sign appropriate releases 3) participate in individual and parenting counseling; 4) submit to substance abuse assessments and follow treatment recommendations, including no abuse of substances; and 5) secure and maintain adequate housing and income.
 2. Review of Compliance with Specific Steps a) Appointments set by or with DCF
Implicit in the expectation of keeping appointments with DCF is the obligation of keeping DCF informed of one's whereabouts. Dino and Becky M had an apartment for a brief period of time. During that time they did keep appointments scheduled by DCF. However, after they moved from this CT Page 9064 apartment, DCF had difficulty from time to time locating them. During one period Becky lived in different shelters.
 b) Sign appropriate Releases
There is no evidence that the respondents did not sign the appropriate releases when requested.
 c) Participate in individual and parenting Counseling
As of February 26, 2001, Becky M had not completed individual and parenting counseling. There is no evidence as to whether Dino received individual and parenting counseling.
 d) Substance Abuse Treatment, including Recommendations
From June of 2000 to January 2001 Becky M. was in and out of substance abuse treatment programs. The programs to which DCF referred her and the duration of treatments are as delineated below:
Agency Dates Reason Disposition
 Crossroads April 2000 in-patient substance left program abuse treatment
 Eagle Hill May 2000 drug detoxification failed to follow after care St. Raphael Hospital July 2000 drug treatment did not comply
 Central Treatment Unit September 2000 drug treatment did not comply
 Alcohol Drug January 2001 drug treatment participating Recovery Center [program lasting presently more than a year]
[in-patient; Hartford]
DCF referred respondent Dino M to facilities designed to treat his drug addiction. His drug of choice is heroin. In the Spring of 2000 DCF referred Dino M. to Eagle Hill Detox Program which he completed. It is a two-week program. Thereafter DCF referred him to another treatment program known as MAAS. Dino M. did not complete the MAAS drug treatment program. Thereafter DCF referred him in July of 2000 to the drug treatment program at the Hospital of St. Raphael which he did not complete. In CT Page 9065 September of 2000 Dino M. was successfully discharged from a short-term drug program at Lebanon Pines with the recommendation for further treatment at a drug treatment program known as Central Treatment Unit (CTU). He did not follow the recommendation for further treatment at CTU. Thereafter he suffered a relapse.
As of February 2001 Dino had not completed treatment for substance abuse. On December 19, 2001 he entered the residential drug treatment at Grant Street Partnership.
 Conclusion as to Substance Abuse Treatment
Respondent Becky M was in and out of short-term substance abuse treatment, and had not completed treatment for substance abuse on February 28, 2001 — the date on which the Petition to Terminate Parental Rights was filed.. Prior to her admission into the Alcohol 
Drug Recovery Center program in Hartford in January of 2001, Becky M had refused to enter drug treatment in a residential program. Dino M's submission to drug treatment has been sporadic.
 e) Secure and maintain adequate Housing and Income
The respondents have not shown that they have obtained adequate housing and income.
 3. Finding re' Failure to Rehabilitate
From the expert testimony presented at the trial the court further finds that if Dino and Becky M were not to use illegal drugs for one or more years, given the lengthy period of their drug use, the prognosis is not favorable that they would rehabilitate themselves in time to fulfill a parenting role for their children.
Having reviewed the evidence presented on the issue of rehabilitation, the court finds that DCF has proved by clear and convincing evidence that respondents Dino and Becky M. have failed to rehabilitate as this term is used in Conn. Gen. Stat § 17a-112 (j)(3)(B).
 C. No On-going Parent-child Relationship
A. Legal standard
General Statutes (Rev, to 1999) § 17a-112 (c)(3)(D), now (j)(3) (D), provides that the court may grant a petition to terminate parental rights if it finds by clear and convincing evidence that "there is no ongoing parent-child relationship, which means the relationship that CT Page 9066 ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child. . . ." In re Alexander C., 67 Conn. 417, 422 (2001). . . In considering whether an ongoing parent-child relationship exists, the feelings of the child are of paramount importance. . . . The ultimate question is whether the child has no present memories or feelings for the natural parent. . . . Feelings for the natural parent connotes feelings of a positive nature only." (Citations omitted; internal quotation marks omitted.) In re Jonathon G., 63 Conn. App. 516, 525, 777 A.2d 695
(2001). Id
B. Examination of Parent-Child Relationship
In his report to the court Dr. Michael Haymes defined the term "psychological parent," and expressed his expert opinion of who fulfills this role in the lives of the children.
 The psychological parent is one who forms the nexus of dependency, security, attachment and identity in the internal schemas of the child. For the younger three children . . . those representations are likely to be the foster parents. [The younger three children have no conception of (the natural) parents as being parents to them.] For the older three children the images that comprise the psychological parent are in flux. In fact, most of their dependency needs are being met in their foster settings and have been substantially met there for some time. . . . [T]hey feel more secure that they will be met there, except for Taylor. She is trying to solve . . . which parents, birth or foster, to connect to psychologically and emotionally.
From the evidence presented the court shall further address each child's perception of the child-parenting feelings in his/her life.
 1) Justin M, born on August 1992
Justin is having difficulty mediating his feelings for his parents with those of his foster parents. Although Justin has feelings for his natural parents, he is healing from the loss promise of being bonded with them, and identifies his emotional needs as being met by his foster parents.
 2) Taylor M., born on April 1994 CT Page 9067
Taylor wishes to give Becky M. another chance to be her mother. Taylor is attached to the notion that she and her siblings will return to the custody of their parents.
 3) Savannah M, born on March 1995
Savannah is ambivalent regarding her attachment to her mother. Savannah is willing to give Becky M another chance to be her mother, provided Becky M. is consistent in providing nurturing and care to her.
 4) Demery M, born on October 1997
Demery does not regard Dino and Becky M as her parents.
 5) Danae M, born on October 1997
Danae does not regard Dino and Becky M. as her parents.
 6) Dean M, born on June 1999
Dean does not regard Dino and Becky M. as his parents.
The evidence discloses that DCF has proved that the facts establish the absence of the statutorily defined "parent-child relationship," for the reason that the relationship that Dino and Becky M have with their children is not one which ". . . ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child. . . ." The court further finds that "to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the (children in this case)."
 Summary of Adjudicatory Findings
This court has found that the Commissioner has proved the following adjudicatory grounds by clear and convincing evidence: 1) that only Dino M has legally abandoned the children in this case; 2) that their parents have failed to rehabilitate after a prior court finding of neglect; and 3) that there is no parent-child relationship between Dino M, Becky M. and their children.
 III. Consent by Becky M. to the termination of her Parental Rights to Dean, Demery and Danae
On March 21, 2001, respondent Becky M. gave her consent to the CT Page 9068 termination of her parental rights to Dean, Demery and Danae. The court finds that respondent Becky M has been represented by competent counsel who reviewed the consent her. The court further finds that the consent has been knowingly and voluntarily made with a full understanding of the legal consequences of this act. The court accepts the consent.
 IV. Dispositional Findings
Having found that the Commissioner has proved as to both parents at least two of the grounds set out in her Petition to Terminate Parental Rights, In re Mariah S., 61 Conn. App. 248, 763 A.2d 71, (2000); cert. den. 255 Conn. 934, (one ground sufficient), the court shall now turn its attention to the dispositional findings in order to determine whether termination of parental rights is in the children's best interest.
The court shall review each statutory factor as set out below. Conn. Gen. Stat. Sec. 17a-112 (k).
 A. Timeliness, Nature and Extent of Services offered by DCF for Reunification of Family[3]
DCF provide substantial services to Dino and Becky M.(See part B of this Memorandum of Decision. The services included case management, and offers of services to address their needs for counseling and drug treatment.
 B. The Terms of any applicable Court Order agreed upon by the Agency and Parent, and the Extent to which there has been Compliance with the Order
On January 28, 2000, the court ordered respondents Dino and Becky M. to, inter alia, 1) keep their whereabouts known to DCF; 2) keep all appointments set by or with DCF; 3) submit to substance abuse assessment and treatment; 4) visit with the children as often as permitted by DCF; 5) participate in individual and family counseling; and 6) secure and maintain adequate housing and income.
 C. Whether DCF has made reasonable Efforts to reunite the Family
The court finds that DCF has made reasonable efforts to reunite the family. The efforts are articulated in the trial exhibits and in this Memorandum of Decision.
 D. The Feelings and Emotional Ties CT Page 9069 of the Children to their Parents
The feelings and emotional ties of the children to their parents are addressed in this opinion.
 E. The Ages of the Children.
Justin is age 10; Taylor, age 8; Savannah, age 7; Demery, age 4' Danae, age 4, and Dean is age 3.
 F. The Efforts made by the Parents to adjust their Circumstances, Conduct or Conditions so as to promote Reunification
Becky M has entered several drug treatment programs, and has relapsed from time to time. Her present involvement in the residential substance abuse program at the Alcohol Drug and Recovery Center is commendable. It is hoped that her current sobriety will be long lasting. Dino M has entered and left several drug rehabilitation programs.
 G. The Extent to which the Parents have been prevented from having a meaningful relationship with their Children
Neither parent has been prevented from having a meaningful relationship with their children.
 V. Order Terminating Parental Rights
For the foregoing reasons, the court finds by clear and convincing evidence that termination of the parental rights of respondents Dino M and Becky M to Justin M, Taylor M, Savannah M, Demery M, Danae M, and Dean M is in the best interest of said children. Accordingly, the court hereby so terminates their parental rights.
 VI. Order appointing Statutory Parent
The court hereby appoints the Commissioner of the Connecticut Department of Children and Families as the statutory parent of Justin M, Taylor M, Savannah M, Demery M, Danae M and Dean M, and orders the Commissioner to file the appropriate motions and reports, as required by law.
Clarance J. Jones, Judge